JANVIER, Judge.
This compensation suit results from two .accidents which occurred on March 7, 1957 ,and April 15, 1957. Plaintiff maintains that ’he has been totally and permanently disabled and that, as the ultimate result, he ■sustained the rupture of a spinal inter-vertebral disc. After the alleged accidents ,of March 7 and April 15, 1957, he continued do work for more than eight months, until ■¡December 27, 1957 and then voluntarily discontinued working for the defendant. On January 21, 1958, he brought this suit .•against the employer, Avondale Marine 'Ways, Inc., alleging that he had been total-fly and permanently disabled. He prayed for judgment based on total permanent disability, and, alleging that the defendant 'had capriciously and arbitrarily refused to •pay compensation prayed for the allowance ,of an attorney’s fee and for a penalty of 12% on th.e amount which had been withheld.
Defendant denied that plaintiff had been disabled as a result of the accidents and averred that h,e had continued at work without cessation until December 27, and then voluntarily left its employ.
In the District Court there was judgment dismissing the suit. In his reasons for judgment the District Judge said:
“ * * * the Court does not believe that the injuries that he suffered as a result of those two accidents was such as to disable him, and that he is now disabled as a result of those accidents if if if fj
The Court noted that the plaintiff had continued to work until December 20 (27), 1957, and referring to the fact that there were lay witnesses produced by the plaintiff and also lay witnesses produced by the defendant, said:
“The Court believes that the witnesses of the defendant should be accepted over the witnesses for the plaintiff, especially, in view of the fact that the plaintiff’s own medical experts repeatedly brought out in their testimony the mild nature of their findings upon examination of the plaintiff. * * * ”
The plaintiff appealed and we, feeling that the evidence did not show conclusively whether the plaintiff was disabled as a result of the accidents and did not show conclusively whether he was suffering from a dislocated spinal disc, thought that additional light might be thrown on the question of the dislocation of the disc by the performance of an operation known as a myelogram, and we said that, since plaintiff was willing to submit to that operation at the expense of the defendant, it would be best to remand the matter in order that the operation might be performed and that then the District Court and this Court might have expert evidence as to what might be evidenced by that operation.
For a more complete discussion of the evidence which was then in the record see our original opinion reported in 107 So.2d 835.
The operation was performed and the matter was again submitted to the District *565 Court. In addition to the testimony of the expert neuro-surgeon as to what was shown by the myelogram there was submitted other evidence which, according to counsel for defendant, tends to impeach the testimony of some of plaintiff’s witnesses who testified on the first trial. After hearing the testimony concerning the myelogram and the other evidence, the District Judge again rendered judgment dismissing plaintiff’s suit, saying:
“The matter now before the Court includes additional evidence, and a consideration of this new evidence, together with the old evidence, convinces the Court even more strongly that the evidence and the law is in favor of the defendant, * *
It is not necessary that we determine whether this last referred to evidence, except that as to the myelogram, should be given any effect, for the reason that we fully agree with the finding of the District Judge, that the record as it is now constituted shows that plaintiff is not suffering from a ruptured intervertebral disc and was not disabled as a result of the accidents complained of.
The evidence as to what is shown by the myelogram leaves no doubt in our minds that there is no ruptured disc as was contended for by plaintiff. X-ray photographs taken during the performance of the myelo-gram operation were shown to Dr. Dean H. Echols, admittedly an expert neurologist especially skilled in determining such matters and in reading such X-ray photographs. When Dr. Echols was questioned as to what those X-rays showed, he said: “ * * * the myelogram was normal. There was no hint of a ruptured disc.” Dr. Echols explained the procedure in performing the myelogram operation and said that in this case great care had been exercised in an effort to make certain one way or the other whether there was any such ruptured disc. He said that normally about three or four X-ray photographs are taken, but that in this case fifteen photographs had been taken, as it was deemed advisable to take more pictures than are normally taken. He said: “We took extra pains so as to not overlook any torn or ruptured disc.” He also said that there was an examination of cerebro-spinal. fluid which is a routine part of the myelogram and that this spinal fluid had been sent to a laboratory for analysis since “a certain percentage of ruptured discs cause chemical changes in the spinal fluid, and one may get an added clue.” He stated that the “spinal fluid was normal.”
Our re-examination of the entire record, including the additional testimony taken on the second trial in the District Court, convinces us that the plaintiff was not disabled as a result of the accidents referred to, and is not now disabled as a result of anything caused or contributed to by those accidents.
Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.