86 So.2d 522

Howard F. WALLACE

v.

REMINGTON RAND, Inc., et al.

No. 42210.

Feb. 20, 1956.

Rehearing Denied March 26, 1956.

McClendon & Benton, J. F. McInnis, Minden, for plaintiff-relator.

Theus, Grisham, Davis & Leigh, by J. C. Theus, Monroe, for defendants-respondents.

McCALEB, Justice.

This is a suit by an employee, who was totally and permanently disabled in an industrial accident while engaged in the performance of his duties, to recover from his former employer and its compensation insurance carrier the maximum compensation benefits payable under the Employers' Liability Act, Chapter 10 of Title 23 of the Revised Statutes, Sections 1021–1351.

The defendants do not contest the fact of plaintiff's employment in a hazardous occupation, the accident arising out of and in the course thereof, the ensuing disabling injury and its permanency within the meaning of the law; their sole defense is that his claim is barred by the prescription of one year, the accident having occurred on June 4, 1952 and the suit not having been brought until January 22, 1954.

Plaintiff contends that prescription has not run as its course was interrupted by the payment to him of weekly wages, for labor not commensurate therewith, from the date of the accident until October 28, 1953, and that, in these circumstances, the payments are to be considered as at least partial gratuities given by his employer in lieu of compensation.

The district court upheld plaintiff's position and awarded him compensation, giving defendants credit for the wages paid in lieu of compensation. But, on appeal, the Court of Appeal for the Second Circuit resolved that, notwithstanding that plaintiff was paid his regular wages for the performance of lighter work, such payments did not interrupt the running of prescription because the prescriptive provision of the statute, R.S. 23:1209, envisioned that " * * * there must at least be an implied understanding between the interested parties that the payments made to the employee shall be in lieu of compensation" in order to produce such effect. See 76 So. 2d 87, 90. We granted certiorari at plaintiff's behest and the matter has been argued and submitted for our determination.

Plaintiff is 36 years old and has been engaged in millwright and automotive mechanical work since his youth. From 1942 until the end of the War, he worked as a millwright for the Louisiana Ordnance Plant, following which he was engaged in other mechanical work until September of 1951, when he rejoined Remington Rand,

Inc. as a millwright.[1] At about 2:00 p. m. on June 4, 1952, during the course of his duties, plaintiff lifted a small motor, while standing in an awkward position, and felt a snap in his back followed by a severe pain. He did not report the accident or go to the infirmary provided by his employer at that time but, on advice of a fellow workman, lay flat on his back for a short interval and, when the pain had subsided somewhat, resumed work during the rest of the day. Plaintiff says that he did not regard the injury as serious; that, when he went home, he took aspirin and applied heat to his back with an infra-ray light; that he thereafter continued on the job and that, about a week later, he reported to the Company's infirmary where a doctor strapped his back and heat was applied under a diathermic machine. However, the doctor in charge of defendant's infirmary (who did not testify) evidently did not believe that plaintiff suffered a disabling injury because he was immediately returned to the job after his back had been strapped.[2] Thereafter, plaintiff continued to perform the duties of a millwright in the defendant's employ until October 26, 1953, or for a period of over 70 weeks. During this time, he received regular wages (he worked on an hourly basis) ranging from $72 to $247.50 weekly. Shortly after the accident, Mr. Raleigh T. Grounds, the foreman in charge of the section in which plaintiff worked, learned of the injury and gave instructions to plaintiff's immediate superior to have him perform only the lighter duties required of a millwright, that is, that he be relieved of lifting and carrying heavy machinery.[3]

Plaintiff testifies that, although he was in constant pain, he did all the work required of him and, at times when no other fellow employee was present to give him a hand, he would lift the motors and other equipment. During the latter part of 1952, plaintiff consulted a doctor in Minden, Louisiana, who gave him temporary relief, but, in the early part of 1953, while engaged in

1. According to the testimony, a millwright is an erector of machinery whose duties at defendant's plant entailed the installation of machines used in the production and loading of ammunition. Some of these machines are heavy; some arrive completely assembled; others are assembled on the job. On occasion, the millwrights are required to push these machines and also to lift heavy objects.

2. It is alleged in defendants' answer that plaintiff was examined on June 18, 1952 by Dr. S. E. Potts, a physician in the employ of Remington Rand, Inc., for a back sprain; that Dr. Potts at that time reported that plaintiff was suffering no disability because of his back condition and that, following the examination, he discharged plaintiff as able to perform the same duties he was undertaking at the time of the accident.

3. These orders were given without the knowledge or consent of the officials of Remington Rand, Inc. Mr. Rex D. Perritt, General Foreman of the General Maintenance Department (only witness placed on the stand by defendants), testified that he did not instruct anyone to give plaintiff light work; that plaintiff earned the wages of a millwright and that no one ever reported that his work was unsatisfactory.

night work at the plant, plaintiff wrenched his back when he stepped in a hole and, from then on, the pain in his back, radiating down his leg, was more or less incessant. Still he worked on until October 26, 1953. At one o'clock on that day, plaintiff says that the pain was so unbearable that he asked his foreman to take him to the hospital. When he arrived there, infra-ray heat treatments were again applied for about 30 minutes and then plaintiff was taken back to the shop where he worked for the rest of the day with an electric heater placed on a stool beside him. That evening plaintiff returned to the hospital and consulted Dr. Potts, who X-rayed his back (apparently for the first time), strapped it and told him to come again on Wednesday, October 28, 1953. Upon plaintiff's return, Dr. Potts reported that he had not "found a thing about the X-ray" and sent him to Shreveport to consult Dr. Carson Reed, an orthopedic surgeon, who diagnosed plaintiff's ailment as a ruptured or herniated disc in the area of the fifth lumbar vertebrae. On December 2, 1953, a mileogram was made on plaintiff which conclusively confirmed Dr. Reed's prognosis. An operation was performed on December 4, 1953, which until now has not proved successful, and plaintiff has been fitted with a back brace which he has been instructed to wear for an indefinite period of time. At the

last examination, made on February 5, 1954, Dr. Reed thought that it would require from nine to twelve months for plaintiff to reach a maximum improvement and said that it was then impossible to state definitely the ultimate extent of his recovery.

It is clear from the foregoing facts that, whereas plaintiff's present total disability stems from the accident of June 4, 1952 and whereas the injury sustained in that accident may have been of such severity as to incapacitate many men, it did not disable plaintiff at inception for he continued to perform all labor required of him until October 26, 1953, when the resultant pain from the injury became so pronounced that he had to stop work. Obviously, insofar as its effect on plaintiff was concerned, the accident of June 4, 1952 did not produce immediate disability as neither he [4] nor his employer believed him to be disabled.

■ Therefore, we agree with defendants and the Court of Appeal that the money paid plaintiff from the date of the accident until October 26, 1953, when he could no longer work, was fully earned—indeed earned under great stress—for, while plaintiff's foreman instructed his immediate superior to put him on lighter duties, the fact remains that he performed practically all the work required of a millwright with his employer's approval as its own physi-

4. When asked by his counsel whether he was aware after June 4, 1952 that he might have some right to compensation under the law, plaintiff replied "No, I'll just be frank with you. I have never drawed Compensation in my life; I have worked hard all my life and wasn't aware of it, of the thoughts".

cian did not consider that the injury was serious enough to take him off the job.

But our conclusion that plaintiff earned the wages paid him and that no part of the payments can be regarded as compensation or in lieu thereof, contrary to the mistaken theory under which plaintiff's counsel instituted the suit, does not necessarily warrant a holding that the plea of prescription of one year is well founded. And the circumstance that plaintiff has. brought the suit under a misapprehension of fact and law, that the wages paid during the period when he was working were at least partially in lieu of compensation, does not preclude him from maintaining his claim if it is not prescribed, as our Employers' Liability Act is paternal legislation subject to liberal construction by the courts, it being specially provided therein (see R.S. 23:1317) that the courts shall not be bound by technical rules of evidence or procedure. Accordingly, the question remains whether plaintiff's action is prescribed under R.S. 23:1209.

R.S. 23:1209 provides for two periods of limitation. . Initially, it prescribes a period of one year from the date of the accident within which suit must be brought. This prescription is interrupted by the making of compensation payments and it does not begin to run again until after the last compensation payment is made. The other limitation, which was provided by the amendatory Act 29 of 1934,

is also a prescription of one year, coupled with a peremption of two years. It declares "Also, where the injury does not result at the time of, *or develop immediately after the accident*, the limitation shall not take effect until the expiration of one year *from the time the injury develops*, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun *within two years from the date of the accident*." (Italics ours.)

This court has but recently considered and construed the quoted provision in two cases, Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218 and Johnson v. Cabot Carbon Company, 227 La. 941, 81 So.2d 2. The facts of the Mottet case are practically parallel with this one. There, plaintiff, a glass cutter, was injured on January 27, 1946 while lifting heavy glass. His injury was diagnosed as neuritis but he did not stop work. During September of 1946, he visited Johns Hopkins Hospital in Baltimore, Maryland and was examined by an orthopedic physician who found that he was suffering from a partial thinning of the fifth lumbar intervertebral space and, on his return to work, he was changed from cutting heavy glass to light glass at his own request as the latter did not entail as much strain in weight lifting. He continued cutting light glass until March 11, 1947, when his condition became so painful that he was forced to cease work entirely. In attempting to defeat plaintiff's action as prescribed, defendant urged that the one-year limita-

tion began to run on January 27, 1946, when the accident occurred. The Court of Appeal sustained this contention but we rejected it on certiorari, holding that prescription did not begin to run until the injury developed and that "the injury did not develop into total disability until March 11, 1947, at which time the plaintiff could no longer pursue his trade as a glass cutter".

In the case at bar, there is not the slightest doubt that, from a practical aspect, plaintiff's injury did not develop into total disability until October 26, 1953, when the pain in his back became so intense that he could no longer continue his employment. True enough, the law did not require plaintiff to work during those 70 tedious weeks following the accident enduring the pain that he must have continuously experienced and perhaps a man of less fortitude would have immediately stopped working and demanded compensation for total permanent disability. But for us to presently conclude that the injury developed on the day of the accident would be dealing in conjecture [5] and the commencement of prescription cannot be decided on that basis. What may be a disabling injury to one man may not be to another and the plain purpose of the amendment to the compensation law by Act 29 of 1934 is to provide a reasonable period of limitation in cases like this, where the injured workman continues on at his job and earns his wage, even though he does not perform all of the duties formerly assigned to him. It is to be remembered that the statute does not countenance an unseasonable delay for filing compensation claims in any case as it provides a peremption of two years from the date of the accident within which all suits must be instituted.

The court, in Mottet v. Libbey-Owens-Ford Glass Co., supra [220 La. 657, 57 So.2d 219], construed the language of R.S. 23:1209 that "the limitation shall not take effect until the expiration of one year from the time the injury develops", to mean that prescription does not begin to run until the time the workman is unable to substantially perform the duties of his employment. This is a fair interpretation of the statute and in keeping with the beneficent object of its enactment. Development, as applied to a compensable injury, signifies something more than occurrence and pain. It connotes the time when

5. It was stipulated between opposing counsel that, if Dr. Carson Reed had been called to testify, he would have stated that it was his opinion, from the history given him by plaintiff in December of 1953, that the accident of June 4, 1952 was the cause of the herniated disc and that it was further his opinion that plaintiff was totally disabled after the accident from performing any work requiring heavy lifting, stooping or bending of his back, as such movements would cause him severe pain and discomfort. This opinion of Dr. Reed is highly speculative for the testimony shows that plaintiff did, on occasion, lift heavy machinery and generally perform the work required of him as a millwright without complaint for many months following the accident.

disability to perform work becomes manifest either to the injured employee or his employer. In the case at bar, it is obvious that manifestation of plaintiff's incapacity did not occur until October 26, 1953.

For the foregoing reasons, the judgment of the Court of Appeal is annulled and it is now ordered that there be judgment herein in favor of plaintiff, Howard Wallace, and against the defendants, Remington Rand, Inc. and the Travelers Insurance Company, in solido, for compensation at the rate of $30 per week commencing October 26, 1953 for the duration of his disability, not exceeding 400 weeks, with interest at the rate of 5% per annum on each past due installment from its due date until paid.

It is further ordered that all accrued amounts with interest from the due date of each installment at the said rate, until paid, be paid in a lump sum and that the fee of the attorneys for plaintiff be fixed and approved at a sum equivalent to 20% of the amount collected under this judgment, provided that the maximum attorney's fee shall not exceed the sum of $1,-000, said fee to be paid out of the award made to plaintiff.

It is further ordered that the plaintiff have judgment against defendants in solido for the sum of $500, for medical expenses, and the right to bring suit against defendants for future medical expenses occasioned by his injury is reserved to him. All costs are to be paid by defendants.

MOISE, J., absent.