GLADNEY, Judge.
This suit for the recovery of workmen’s compensation was instituted by Floyd H. Watson on August 26, 1954, against his former employer, the United States Tobacco Company, and its insurer, Fidelity & Casualty Company of New York. The District Court sustained a plea of prescription of one year founded on LSA-R.S. 23:1209 and dismissed plaintiff’s action, hence this appeal.
Entitlement to compensation is predicated on an injury received June 8, 1953, but which injury appellant asserts did not develop into disability preventing him from properly performing the duties of his employment until the early part of the year 1954. Plaintiff’s employment was terminated by his superiors as of July 31, 1954. Counsel for appellant assigns error to the judgment from which appealed in that it is in conflict with the following authorities: Mottet v. Libbey-Owens-Ford Glass Co., 1952, 220 La. 653, 57 So.2d 218; Johnson v. Cabot Carbon Company, Inc., 1955, 227 La. 941, 81 So.2d 2; Wallace v. Remington-Rand, Inc., 1956, 229 La. 651, 86 So.2d 522; Bigham v. Swift & Co., 1956, 229 La. 341, 86 So.2d 59.
Watson, at the time of injury on June 8, 1953, was forty-nine years of age. He commenced work with the United States Tobacco Company as a salesman in 1942, at a salary of $27.50 per week and steadily progressed in his employment until he became District Manager of Louisiana with an annual salary, after February 1, 1953, of $4,900. His duties, inter alia, as District Manager consisted of hiring and training local salesmen, traveling through his territory, making inventories, deliveries of merchandise, some packages of which weighed from 25 to 40 pounds, and placing advertising. On occasions he'was required to attend sales meetings outside of the state. According to his immediate superior, A. M. Cook, after January 1, 1954, the volume of sales in plaintiff’s territory fell off substantially and there was an unusual turnover of salesmen, all of which brought about dismissal of his services as of July 31, 1954.
After July 31, 1954, plaintiff remained unemployed until the following November when he secured a job selling cigars at a salary of approximately $130 per week, out *207 of which he was required to pay certain expenses. He testified that in this new employment he does not have to lift anything heavier than a box of cigars, whereas in his former employment he was frequently required to carry bundles and packages of tobacco that weighed as much as forty pounds.
It is not disputed that on June 8, 1953, plaintiff sustained an injury to his back when lifting a tire and while performing services in connection with his employment in Richland Parish, Louisiana. Following this injury plaintiff was off from work approximately two weeks due to a herniated intervertebral disc in the region of the fifth lumbar vertebra, and was under the care of Dr. A. Scott Hamilton, a prominent orthopedic surgeon of Monroe, Louisiana. Plaintiff was required to wear a belt and conservative treatment was administered. Watson continued his usual work but visited the doctor on June 18, 19, 22, 26, July 8, September 9, and November 13, 1953, after which time plaintiff did not call upon Dr. Hamilton again until August 4, 1954. The injury was duly reported to plaintiff’s employer and insurance carrier, the defendants and appellees herein. It was also known to A. M. Cook, the immediate superior of plaintiff and to Eddie E. Gregory, the salesman with whom plaintiff worked. The occurrence of the injury and its diagnosis have not been questioned by the defendants. Workmen’s compensation was paid for a period of five weeks, commencing as of June 9th, but it appears the employer received the benefit of these payments while paying plaintiff a full salary. Appellant continued to draw full salary from his employer until his dismissal. During this perod of time he was more or less free from any direct supervision but made current reports detailing his activities, to Mr. Cook of New York City, his immediate boss.
Coúnsel for appellees assert that the detailed and weekly reports by plaintiff indicate activities which are entirely inconsistent with the disability claimed. It is argued that plaintiff performed all the duties and services required of him and that his dismissal was not related to his employment but that this was 'brought about because of inability of Watson to properly select and train salesmen, upon whom the volume of business was directly dependent. Watson’s position is that he continued to perform the services required of him while suffering considerably from his back; that in the latter part of 1953 his back seemed to get better until December when there was a recurrence of back pain while attending a sales meeting in Birmingham, Alabama, to which place he had traveled by train. He testified that on that occasion his pain was of such a severity it necessitated his returning to Monroe by plane, and thereafter he suffered more and became more and more nervous.
Dr. Hamilton, during the several examinations made during the year 1953, repeatedly reported his findings to the insurer but as late as November 13, 1953, he thought there was an excellent chance Watson would recover. As of that time he considered plaintiff temporarily disabled only, reasoning that plaintiff was performing his work. Dr. Hamilton did not recommend surgery but suggested plaintiff have a myel-ogram taken for the purpose of locating the exact level of the herniated disc. The next medical examination was made on August 4, 1954, shortly after the termination of plaintiff’s employment. In connection with Watson’s condition existing at that time Dr. Hamilton related:
“Q. And was he still suffering from a ruptured or herniated disc in August, 1954, when you last saw him profes-, sionally? A. That was my opinion, yes, sir.
“Q. In your opinion what if any cure should be — could ‘be rendered? What could be done to cure him? A. I think that his symptoms, persistent as they were, presented to me at the time of my last examination, that a myelo-gram should be done and in the event that it was positive, that he should have a laminectomy — that is an operation on the spine for removal of the disc.
“Q. Is that considered a major operation? A. Yes, sir.
*208 “Q. And without such an operation do you think Mr. Watson will ever re- ' cover from the effects of this ruptured disc? A. It is doubtful; if he has gone for somewhat over a year without a more or less complete remission of symptoms that he will completely recover. "
“Q. You think the condition then is permanent without an operation? A. I believe so at this time.”
Dr. Hamilton was further requested to express his opinion as to the ability of plaintiff to perform employment which required him to carry “bundles of tobacco or packages of tobacco that weigh 25 to 30 or 40 pounds, and stooping and those kind of maneuvers, riding in a car all day and distributing samples and tobacco and snuff.” He answered by saying:
“I would say that it would probably be difficult for him to do that type of work routinely, day after day for entire days. The reason for being a little equivocal in my answer is simply this, —individuals who have a ruptured disc can do a lot. of things sometimes entailing the output of a good deal of effort over short periods of time. They do it even though it causes them pain, possibly because of necessity and possibly because of their own wishes in the-matter. For example a farmer will be able. to dig three or four postholes in a day and set the posts and go back the next day and do the same thing but he is not able to woi'k 8 or 12 hours-a day doing the same thing day after day and T think that is the situation so far’as Mr. Watson goes. I think that he would be able to get out and do a fair amount, of work but I doubt if he would be able to do a full day’s work day after day.”
The plea of prescription and’peremption provided in LSA-R.S. 23:1209 reads:
“In case of personal injury * * * all claims for payments shall be forever barred unless within one year after the ( accident ' * * * the parties have agreed upon the payments to be made under this' Chapter or. unless within one. year after the accident proceedings have been 'begun * * *. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment. Also, where the injury does not result at the time of, or develop' immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.”
The instant suit which alleges disability originating from an accident on June 8, 1953, was not filed until August 26, 1954. Consequently plaintiff’s rights must be considered as prescribed by the lapse of one year from the date of accident, unless his action falls within the amendatory provision, Act 29 of 1934, which provides:
“Also, where the injury does not re-suit at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the- time the injury develops, but in all such cases the claim, for payment shall be forever 'barred unless the proceedings have been begun within two years from the date of the accident.”
'' In interpreting this latter clause of the statute, the Supreme Court held in Mottet v. Libbey-Owens-Ford Glass Co., supra, where the plaintiff was injured on January 27, 1946, that suit was timely filed on August 4, 1947. The court in overruling the plea of prescription of one year under LSA-R.S. 23:1209, stated [220 La. 653, 57 So.2d 219]:
“In our opinion this amendment was designed to take care of cases similar to the one herein involved. From the very wording of this amendment, an employee who receives ah injury flowing from an accident that later develops into 'disability is excepted from the general rule and his right of action is not perempted until one year after the *209 injury has developed. In this case the injury did not develop , into total disability until March 11, 1947, at which time the plaintiff could no longer pursue his trade as a glass cutter. For us to say that he was disabled to perform the duties of his trade prior to that time would be mere conjecture on our part because he had, in fact, continued to perform the duties of his trade until that date. His suit was filed on August 4, 1947, a short time after he became disabled, and within a year from that time. 'Such' being the case the plaintiff’s suit was timely filed and the plea of peremption cannot be maintained.”
The Mottet' case was followed in principle in Johnson v. Cabot Carbon Company, Inc., supra. In that, case suit was instituted on December 17, 1952, to recover compensation for back injuries allegedly sustained on December 18, 1951. A plea of prescription of one year was filed 'by the defendant and evidence adduced to show that plaintiff’s accident was actually sustained on December 12, 1951. The Supreme Court granted writs and reversed a judgment sustaining the plea of prescription, the Supreme Court decree holding that suit was filed within a year after plaintiff became. totally disabled and therefore, was not barred. In decisions by the Supreme Court in Wallace v. Remington-Rand, Inc. and Bigham v. Swift & Company, both cited supra, the doctrine of the Mottet case has been followed. Justice McCaleb observed in the Wallace case [229 La. 6ͻ8, 86 So.2d 524]:
“It is clear from the foregoing facts' that, whereas plaintiff’s present total disability stems from the accident of June 4, 1952 and whereas the injury sustained in that accident' may have been of such severity as to incapacitate many men, it did not disable plaintiff at inception - for he continued to perform all labor required of him until October 26, 1953, when the resultant pain from ■ the injury became so pronounced that he had to stop work. Obviously, insofar as its effect on plaintiff was concerned, the accident of June 4, 1952 did not produce immediate disability as neither he nor his employer believed him to be disabled.”
A review of the evidence leaves but little doubt that plaintiff continued to perform a large measure of the responsibilities attendant upon his occupation following his injury. We are convinced, however, both from his own testimony and from that of Dr. Hamilton, that during the months of August, September, October and November, 1953, it was believed plaintiff would overcome the disability caused by the accident of June 8, 1953. Dr. Hamilton considered his chances for recovery to be as much as eighty-five per cent. Watson’s condition was well known to his employer and its insurer for Dr. Hamilton furnished regularly detailed reports which expressed this prognosis. The testimony of plaintiff that his disability became worse in December, 1953, and that thereafter he worked only with pain is countered by evidence tendered by appellees of the extensive activities reflected in Watson’s company reports. It is further pointed out that Watson did not complain mufch to his fellow workers or superiors and from this it is argued plaintiff was not disabled from performing all the services required in his employment. We cannot ignore, however, the importance of the fact that Mr. Cook, the superior of plaintiff, testified Watson’s sales substantially fell off after January 1, 1954, and that his work was generally unsatisfactory, which required his termination by the company on July 31, 1954. We take notice also that Dr. Hamilton testified plaintiff became more nervous and worried about his employment which seems consistent with an increase in plaintiff’s disability and that he was apprehensive of maintaining his position with the company., We surmise that Watson, if in such a frame óf mind, would be inclined to refrain from disclosing an incapacity which might lead to his discharge.- We think the fact that his sales fell off after January of 1954 and his work became less satisfactory to his employer is compatible wifh the growing inability of Watson to perform the duties of-his employment.
*210 We are of the opinion the facts justify a finding that plaintiff’s disability did not develop and commence the running of the statute of prescription until his service became unsatisfactory during 1954. It is clear that after January 1, 1954, plaintiff was no longer earning the salary which was being paid to him and this was the justification which brought about the termination of his employment. In line with the interpretation placed upon the prescriptive statute by the authorities hereinabove cited we are of the opinion that the institution of this suit by plaintiff on August 26, 1954, was well within the year after the accident sustained by plaintiff developed into disability.
It follows from our findings as herein-above set forth that the judgment from which appealed is in error and must be annulled and set aside, the plea of prescription of one year based on LSA-R.S. 23 :1209 is hereby overruled, and this suit is remanded to the Fifth Judicial District Court for the Parish of Richland, for further proceedings not inconsistent with the views hereinabove expressed, the costs of this appeal to await the final determination of the case.