YARRUT, Judge ad hoc.
Plaintiff appeals from a judgment denying him workmen’s compensation for an alleged incapacitating back injury. At the time of his injury plaintiff was engaged as a tack welder in ship construction and repair in the employ of defendant at its yard in Jefferson Parish.
On March 7, 1957, plaintiff suffered a fall from the top of a deckhouse to the main deck of an LST ship on which he was working, and sustained a severe back injury. Notwithstanding his injury, plaintiff continued to work from March to December 27, 1957, when he left defendant’s employ voluntarily because he could no longer do the work. During this period plaintiff frequently consulted, and was treated by, defendant’s plant physician for various complaints. Plaintiff also consulted his own physician during this time for his back complaint.
Defendant maintains for its employees a medical center which is open from 6 o’clock a. m. until midnight (sometimes longer), with a graduate nurse in attendance at all times. Employees are required to report all injuries and are encouraged to apply to the center at any time they feel they are in need of medical treatment. Dr. Dyer J. Farley, plant physician, is on duty every day at specified hours for consultation.
■ Defendant admits that plaintiff reported to, and was treated at, its medical center *836 many times during the period from the date of his injury in March to the time he voluntarily left in December 1957, but contends that he was treated for complaints and ailments other than a back injury.
Defendant’s medical chart shows that on March 7, 1957, plaintiff reported his fall and felt soreness in the left hip and brush burns for which he was given treatment. On March 8th he called for a recheck of his left hip but was discharged without seeing the doctor. Then twice again in March and three times in May he reported for medical attention in connection with flash burns and headache and a small laceration of the forehead, for which he was given treatment.
On May 31st plaintiff again appeared at the center for treatment for a pain felt in his groin as a result of picking up a sledge hammer. Dr. Farley thought he might have a hernia and gave him a belt to wear. On four different occasions in June he reported to the center for a checkup with reference to his abdomen and for a pain located in the posterior lower thoracic region. On October 11th plaintiff reported to the center for treatment for pain caused when lifting objects, for which he was given treatment. On November 25th he appeared again and was rechecked by Dr. Farley who located pain “in the 7th and 8th thoracic and across dorsal muscles,” for which he was given treatment. The medical chart has a notation that plaintiff:
“States he has been working hard. Prob. muscle soreness. Claims injured about six months ago — give no trouble.”
Defendant lays stress on the fact that the hospital report shows that plaintiff never, at any time, complained of low back pain, but that his principal complaints were soreness in the left hip and slight pain in the upper back, from which he had recovered from an earlier injury.
The record consists of the usual conflict of medical and lay testimony. Both parties called expert medical witnesses, orthopedists and neurologists. Drs. Has-lam and Llewellyn appeared for plaintiff, and Drs. Pollingue and Page for defendant, whose written reports are in evidence. It will serve no purpose to discuss in detail the testimony of these doctors who only examined plaintiff in January 1958, after he left defendant’s employ in December 1957. However, to summarize, three specialists, two for plaintiff and one for defendant, agree that there was something-wrong with plaintiff’s back (ten months after his fall), although two thought it probably a disc injury and one a sprain superimposed on tight hamstrung muscles. All three recommended some type of orthopedic treatment, and two mentioned the probability or possibility of surgery. As against these three, one specialist finds nothing wrong with plaintiff in his field and was careful to so limit himself. The last expert was Dr. Page, who found nothing wrong with plaintiff but did not exclude the possibility of an orthopedic injury, merely giving his opinion that there was nothing neurologically wrong with plaintiff.
With reference to the lay testimony, fellow employees, including his supervisor, testified that plaintiff was a good worker, did his work well, and seldom complained, although some of his friends or co-workers, who either worked with him or rode to work with him, testified he complained of pain in the back. Plaintiff and his wife testified he suffered pains almost nightly upon his return from work. The testimony of plaintiff and members of his family, because of the esprit de corps that exists between them, must be carefully considered. However, it is significant that plaintiff, aged 33, has a wife and three children, for whom he has been a steady, hard worker and provider; that he has never before been involved in a personal injury claim or workmen’s compensation, and never before had any back trouble. Plaintiff’s testimony appears to be candid and honest. The fact that a worker has con *837 tinued in his same work for long periods, even longer than nine months, as he did here, did not militate against his subsequent claim for compensation, but merely fixed the commencement of compensation at a later date. Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522; Bigham v. Swift & Co., 229 La. 341, 86 So.2d 59; Johnson v. Cabot Carbon Company, Inc., 227 La. 941, 81 So.2d 2; Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218; Watson v. United States Tobacco Company, La.App., 87 So. 2d 205.
In Johnson v. Cabot Carbon Company, Inc., supra, the Supreme Court said [227 La. 941, 81 So.2d 3]:
“ * * * He had a wife and six minor children — seven urgent and insistent reasons why he should continue to earn his salary of $400 per month in lieu of workmen’s compensation.”
The testimony seems to be about equally balanced, but it is significant that since the doctors recommended a myelogram, which was never made, and plaintiff’s counsel stated in open court that plaintiff would submit to a myelogram as further evidence he has a herniated ruptured disc, if he had the financial means, we think this case should be remanded to the District Court to give plaintiff such an opportunity. The result of the myelogram may prove plaintiff’s case with that certainty that the law requires.
Therefore, to avoid any misgivings, and to permit this myelogram to be made, but without in any manner ordering that plaintiff submit to such myelogram, we believe the matter should be remanded to permit plaintiff to submit to such myelogram.
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled and set aside, and this matter is now remanded to the Twenty-fourth Judicial District Court for the Parish of Jefferson for the reception of evidence and pronouncement of judgment in accordance with the record as then presented; all according to law and consistent with the views herein expressed. The assessment of costs is to await final determination hereof.
Set aside and remanded.
McBRIDE, J., absent.