REGAN, Judge.
Plaintiff, Harold Joseph Madison, employed as a common laborer, instituted this suit against the defendant, The American Sugar Refining Company, his employer, endeavoring to recover maximum workmen’s compensation resulting from a back injury, which initially manifested itself in March 1958 when he was lifting and stacking 100 pound bags of sugar in a freight car; this injury ultimately developed into a ruptured intervertebral disc, which, it is asserted, totally and permanently disabled him in the month of February 1959.
Defendant pleaded the exception of prescription, insisting that plaintiff’s right of action had prescribed since he failed to file suit before July 22, 1959. This exception was overruled and defendant then denied that the injury was incurred during the course of plaintiff’s employment.
From a judgment[1] awarding plaintiff compensation in the amount of $35 per week for a period of 400 weeks, beginning March *648 7, 1959 through September 15, 1959, subject to a credit thereafter of $35 per week for as long as plaintiff continues, in defendant’s employ [2], both plaintiff and defendant have appealed.
The record reveals, chronologically related, these pertinent facts:
Plaintiff, prior to the month of March 1958, had been employed by the defendant for approximately twenty years, alternately performing the work of storer [3] and car bracer[4], as his employer’s needs therefor arose. Approximately 75% of this time plaintiff labored as a storer, which requires considerably more physical exertion than the work of a car bracer.
In March 1958, while lifting a sugar sack into a freight car with the assistance of a co-worker, he experienced a stinging pain in his back, which forced him to rest momentarily before he could finish the day’s work. The next day he reported to the company’s dispensary where a nurse applied heat to his back and subsequently advised him that he should consult his personal physician. In conformity with her instructions, he consulted Dr. Epps, who prescribed medicine to alleviate the pain; after a week of medication he reported to the doctor that the prescription had helped diminish the pain.
From late March or early April of 1958 until February 1959, plaintiff performed substantially the same duties as he had prior to the accident. Approximately four months of this time he worked as a storer, and throughout the entire period he frequently complained to his co-workers of the existence of a pain in his back.
In February 1959 plaintiff experienced a second attack of acute pain while engaged in the work of a storer, which necessitated another visit to Dr. Epps. He was then hospitalized for six days and following a thorough examination, his condition was diagnosed as a slipped disc. However, his physician permitted him to return to work.
On March 30, 1959, plaintiff was assigned to work as a car bracer and periodically he also operated a lift truck.
On July 22, 1959, he instituted this suit.
On August 13, 1959, he was reassigned to the job of storer, which duties he continued to perform through September 15, 1959.
On September 16th, he assumed the work of operating a power sweeper. The record reflects that this is a desirable position, which is available only to laborers possessing job seniority, and although the wages are forty cents per week less, all workmen who appeared to testify on plaintiff’s behalf, including plaintiff, related that most storers considered the work of power sweeper more desirable.
On December 11, 1959, a myelogram was performed on plaintiff, which confirmed the diagnosis that he had incurred a ruptured intervertebral disc at the third interspace.
Predicated on the foregoing facts, the trial court concluded that plaintiff’s claim had not prescribed and that he suffered a totally disabling back injury incurred during the course and scope of his employment as a storer.
The evidence inscribed in the record clearly substantiates this conclusion; there *649 fore, the only questions which this appeal has posed for our consideration are whether the trial court properly overruled defendant’s plea of prescription and, if so, whether the award of compensation to the plaintiff for a period of six months and the credits to the defendant thereafter were proper.
Defendant initially contends that the trial court erred in overruling the plea of prescription since the disabling injury occurred in March 1958, yet suit was not filed until July 1959, which was more than a year after the injury developed. Defendant insists that the facts hereof do not fall within that category of cases wherein disabling effects developed after the accident, and in substantiation thereof points out that the plaintiff voluntarily transferred to a more desirable job and did not discontinue work as a storer because of the pain that ensued from his injury.
Counsel for the plaintiff conversely insists that the disabling condition of his back did not fully develop until March 1959 when plaintiff’s second attack by acute pain forced him to return to his physician.
To overcome the plea of prescription, the facts of plaintiff’s case must fall within the exception to the one year prescription rule, as set forth in LSA-R.S. 23:1209, which reads:
“ * * * Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have * * * begun within two years from the date of the accident.”
The majority of decisions interpreting this section of the above statute involved factual circumstances wherein the plaintiff, who was injured on the job, continued performing the same duties for many months thereafter before his painful condition forced him to discontinue working. Suit was filed more than a year after the injury but within a year from the date plaintiff quit his job. In overruling the plea of prescription, the courts have fixed the date from which prescription is to begin running as the date the workman was no longer able to perform his duties, and thereby, it also determined that time as the date the injury actually developed. The leading case interpreting the foregoing section of the statute is Mottet v. Libbey-Owens-Ford Glass Co.[5], wherein a glass cutter, who was injured on the job, continued performing the same work for a long period after the accident until finally he was forced because of his injury to discontinue his regular trade of glass cutter. The court therein expressed the opinion that prescription began to run the day that he was compelled to discontinue working since that was the time that the injury “developed into total disability” when he could no longer pursue his trade as a glass cutter.
The Supreme Court, in similar cases[6], has also reasoned that prescription begins to run the day upon which the injured employee can no longer perform the same duties. Predicated on these cases, defendant rationalizes that the plaintiff must actually quit his job because of pain before his injury is established as one which developed after the accident, and to fortify this conclusion he points to the following language extracted from a relatively recent case:[7]
“Analyzing the pronouncements in Mottet v. Libbey-Owens-Ford Glass *650 Co., 220 La. 653, 57 So.2d 218, Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522, and Watson v. United States Tobacco Co., La.App., 87 So.2d 205 (writs denied), we conclude that the phrase 'development of injury’ must be interpreted as meaning the time from which an employee can no longer pursue his trade or occupation.”
While we agree with the courts definition, as it relates to the facts of the Brewster case, we do not agree with defendant’s contention that this criterion must likewise be applied to other specific facts, such as here, yvhere the disabled worker continues to perform similar duties after the accident in substantial pain and voluntarily assumes lighter and more desirable duties when the opportunity presents itself. Compensation cases, like other cases, such as torts, that deal immediately with human conduct must be individualized to meet the needs of various factual conditions if the courts are "to better serve the ends of justice.[8] Here, were we to' apply defendant’s narrow construction of the prescriptive statute to the facts of this case, the court would, in effect, penalize plaintiff for endeavoring, despite his injury,, to maintain a useful place 'in our economic' society and would, "in the final analysis, do violence of the true rationale of the Mottet case. The court therein, 'obéying the legislative mandate to liberally construe the provisions of the Workmen’s ■Compensation Act, predicated its decision on its unwillingness to penalize a con- ■ scientious workman and to arbitrarily set a .date of the injury’s development, based on pure conjecture.
The plaintiff herein first suffered pain in March of 1958, consulted his physician and received medication which, to some extent, alleviated the pain. For approximately one year he continued his duties, although he suffered frequently while working. His second severe attack of pain, which forced him to revisit his physician, occurred in February 1959, and shortly thereafter he learned he had incurred a ruptured disc. After this incident he engaged in lighter work for some four and one-half months but was again assigned to the heavy physical task of storing. Shortly thereafter he bid for and obtained the job of power sweeper. While it is true that he voluntarily assumed new duties, this fact per se should not militate against the prosecution of this suit for the law does not expect or demand that a laborer continue performing substantially the same duties in pain or discomfort. Therefore, we feel compelled to conclude that the trial court properly overruled defendant’s plea of prescription.
The next question posed by this appeal is whether the lower court erred in awarding compensation to plaintiff for six months and credits to defendant thereafter.
Counsel for plaintiff argues that he was a skilled worker, who suffered an economic loss when his disabling condition forced him to select a less physically demanding job; therefore, he should receive compensation payments from defendant in addition to his salary.
Counsel for defendant asserts that the credit subsequent to September 15, 1959 was proper, but that the lower court erred in not crediting defendant with payments between March 7, 1959 and September 15, 1959, since plaintiff, during this period, was *651 performing the same duties he had rendered prior to the injury.
With respect to that part of the judgment awarding payments of $35 per week during the contested six month interval, plaintiff’s counsel concedes that the defendant is due a credit for the time plaintiff worked as a storer. Since the record discloses that plaintiff performed various jobs as his employer’s need therefor arose and that he performed the same work both before and after March 1959, we are of the opinion that the trial court erred in not crediting the defendant during the entire period, since defendant was paying him wages to perform work of a similar character.
We must next determine whether the trial court properly allowed the defendant-employer a credit for each week after September 15, 1959, the date upon which plaintiff assumed his duties as a power sweeper.
The jurisprudence of this state is uniformly to the effect that an employer, who retains the services of an employee who was disabled as the result of a job-connected injury, and who received a compensation award as a result thereof, is entitled to a credit against that judgment for each week he pays the injured employee wages for performing services similar in character to those which he performed before his injury. The rationale thereof is illustrated by the result obtained in Pohl v. American Bridge Division, United States Steel [9] and Beloney v. General Electric Supply Co.[10], wherein the employers were allowed credits for the. weeks that wages or a salary were paid to the injured workmen for performing work of a similar character.
However, if the disabled employee performs dissimilar work for the employer after his injury, he is entitled to both wages and compensation. Thus an injured ship-fitter who worked as a subforeman after his injury[11] and a glass cutter later employed as a watchman after his accident[12] were entitled to compensation in addition to their wages.
Thus, to determine whether the trial court properly allowed defendant a credit for each week it paid plaintiff wages as a power sweeper, we must decide whether plaintiff is performing duties of a character similar in nature to those which he performed before his injury.
It is clear from our jurisprudence that a workman who performs common labor requiring no special skill or training before his injury, and who engages in another form of common labor following his injury, is, for the purpose of judicial categorization, performing work of a similar character. It is only where the workman loses his ability to perform a job requiring special skill or training as the result of an injury that he is considered to be performing work of a dissimilar character thereafter.
Plaintiff insists that a storer is a skilled workman and relies primarily upon the semantics of the labor contract under which plaintiff is employed to support this contention. The labor contract, obviously to consummate its special objectives, places a laborer and a storer in different categories.
We think that this argument is untenable. Common sense dictates that we conclude there is no special skill or training required to stack sacks containing sugar.
*652 For the reasons assigned, the judgment appealed from is reversed insofar as it failed to allow defendant a credit of compensation payments against the wages it paid plaintiff between March 7 and September 15, 1959, and it is now ordered that a credit be so allowed. In all other respects, the judgment appealed from is affirmed.
Reversed in part; affirmed in part.

. Originally the trial judge awarded plaintiff penalties and attorney’s fees prescribed by the Louisiana Workmen’s Compensation Act in instances where an employer (or his compensation insurer) arbitrarily withholds compensation from the injured workman; however, on rehearing, the court withdrew this award since the imposition thereof had not been requested by the plaintiff. It is from the second judgment that the appeal is being prosecuted.

.On September 16, 1959, plaintiff, who is still employed by defendant, voluntarily assumed lighter duties as a power sweeper. A power sweeper’s work consists of driving a mechanical sweeping machine, which is designed to remove sugar from the refinery floors.

. A storer is required to move sugar from a flat truck onto a freight car and stack it from seven to ten sacks high.

. A bracer nails wooden panels across the loaded freight car’s door and does other bracing therein to keep the sugar stacks from shifting while they are being transported.

. 220 La. 653, 57 So.2d 218, 219.

. Johnson v. Cabot Carbon Co., 227 La. 941, 81 So.2d 2; Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522.

. Brewster v. City of Shreveport, La.App., 108 So.2d 801, 802. In this case, plaintiff, a garbage collector, experienced a severe cramp wliile unloading garbage in July 1956. He complained about his condition and requested medical attention for several months, thereafter, however he received none. On September 29, 1956, he quit his job because he could no longer *650 work and the court held that a suit for workmen’s compensation filed September 16, 1957 was filed timely since the injury developed on. the date he quit.

.- The civil law has always recognized that • certain branches of the law call in conspicuous measures for certainty and order for an administration of justice that is strict and in a sense mechanical, such as inheritance or successions, definition of interests in property and the conveyance thereof, matters of commercial law, and transfers of obligations, etc.
Other branches of law are better served where flexible standards, capable of being individualized to meet the needs of varying conditions, supersede the rigid rule with its mechanical application, such as torts and generally those branches of law that deal immediately with conduct.

. La.App., 109 So.2d 823. Here the employer of a structural steel worker who was disabled was allowed a credit for every week the injured workman received wages for steel working after Ms disabling accident.

. La.App., 103 So.2d 491. In this case a truck driver who performed exactly the ■ same duties before and after bis disabling injury was not allowed to collect compensation in addition to his salary.

. Myers v. Jahncke Service, Inc., La.App., 76 So.2d 436.

. Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218.