# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-1624


**BRENDA WHITE**

**VERSUS**

**PHOENIX PHARMACY**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 2
PARISH OF RAPIDES, NO. 02-01954
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***


## OSWALD A. DECUIR
## JUDGE

**\*\*\*\*\*\*\*\*\*\***


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks and
Oswald A. Decuir, Judges.

### AFFIRMED IN PART, REVERSED IN PART, AND AMENDED.

**Linda S. Blackman**
**Attorney at Law**
**1611 Jimmie Davis Highway, Suite C**
**Bossier City, LA 71112**
**(318) 742-4713**
**Counsel for Defendant/Appellant:**
      **Phoenix Pharmacy**

**R. Scott Iles**
**Attorney at Law**
**P. O. Box 3385**
**Lafayette, LA 70502**
**(337) 234-8800**
**Counsel for Plaintiff/Appellee:**
      **Brenda White**

**DECUIR, Judge.**

Phoenix Pharmacy appeals a workers' compensation judgment awarding indemnity benefits to Brenda White, a former employee who was injured on the job. Raising issues of prescription, time of accident, disability, penalties, and attorney fees, Phoenix contends the trial court erred in its decision. White answered the appeal, requesting an increase in attorney fees for work done on appeal and contending the trial court erred in the assessment of penalties and costs. For the following reasons, we affirm in part, reverse in part, and amend.

The record reveals that Brenda White was employed as a clerk and cashier at Phoenix Pharmacy. Phoenix has a UPS shipping service available to the public which White handled on a daily basis. In early September of 2000, a customer requested shipping of an automobile transmission. White weighed the transmission and determined it was too heavy to ship via UPS because it was over 100 pounds. She then helped the customer return the transmission to his truck. Immediately upon re-entering the pharmacy, White told her co-worker what she had done and indicated that she had hurt her lower back.

Within a few days, White was in pain and sought medical care on the military base where her husband worked. White was diagnosed with an acute lumbosacral strain, was given pain medication, and was told to rest for several days. Upon her return to work after two weeks, Phoenix made accommodations and allowed White to use a stool, take time off for physical therapy, continue her pain medication, and refrain from heavy lifting when necessary. Phoenix also paid White her regular salary for the two weeks she was unable to work. The testimony in the record clearly shows that White's co-employees and supervisors knew of the incident involving the transmission and knew she had been hurt as a result thereof.

Throughout the next several months, White continued working, but she also continued to seek medical care from time to time. In March of 2001, she had an MRI which showed a small disc herniation. She continued to take narcotic pain medication and briefly saw a physical therapist. White testified that she started looking for a better paying job, one that would allow her to work fewer hours for the same amount of income. Thinking she had secured such a position, White resigned from Phoenix Pharmacy in September of 2001. The new job, however, never materialized, and White spent a short time bar tending two days a week.

White's medical condition continued to worsen. She was given steroid injections in the spinal canal and, at one point, had intravenous pain medication in the army hospital emergency room. In June 2002, White had another MRI which showed a "huge disc rupture." On August 8, 2002, White underwent a lumbar laminectomy at the L5-S1 level of her spine. She spent several months recuperating and was released to return to work on March 21, 2003. At the time of trial, White was self-employed as an Avon representative. The trial court awarded supplementary earnings benefits for the period White worked as a bartender and then after she was released to light duty work following surgery; otherwise, temporary total disability benefits were awarded from the date White left her job at the pharmacy.

The above-stated facts were essentially unrefuted at trial. In this appeal, Phoenix makes much of the fact that the date of the transmission incident was not proved with certainty. White's testimony concerning the fact of the accident some time in early September 2000, however, was corroborated in the medical records and in the testimony of Phoenix personnel. White's supervisor knew she had been injured at work. For whatever reason, she chose not to complete an accident report contemporaneous with the accident, instead filling out the form a year later after

2

White left her employment. Under these circumstances, we find ascertainment of the actual date of the accident unnecessary.

Regarding the question of whether White's claim for indemnity benefits has prescribed, the pertinent dates are revealed in the record. In early September of 2000, White sustained an accident at work. Between the accident and September of 2001, White periodically sought medical treatment while continuing to work; in March 2001, an MRI showed a small herniation. On September 30, 2001, White resigned from Phoenix Pharmacy. Between October 2001 and March 2002, White attempted working and continued to seek medical treatment. Her claim for benefits was filed on March 18, 2002.

The prescriptive period for filing a workers' compensation claim is contained in La.R.S. 23:1209(A), which provides:

> In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and [FN1] in this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1), (2), (3), or (4). Also, when the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.

In *Sevin v. Schwegmann Giant Supermarkets, Inc.,* 94-1959 (La. 4/10/95), 652 So2d 1323, the supreme court described the developing disability doctrine as follows:

> Workers' compensation laws are to be liberally interpreted in favor of protecting workers from the economic burden of work-related injuries. *Lester v. Southern Casualty Ins. Co.*, 466 So.2d 25 (La.1985); *Parks v. Insurance Co. of North America*, 340 So.2d 276 (La.1976). In furthering that policy, this court has construed La.Rev.Stat. 23:1209 A's term "the time the injury develops" liberally in cases in which the worker

3

attempts to continue working until no longer able to perform his or her employment duties. Wex A. Malone & H. Alston Johnson III, 14 Louisiana Civil Law Treatise--Workers' Compensation § 384 (3d ed. 1994). This court has consistently held that an employee who suffers a work-related injury that immediately manifests itself, but only later develops into a disability, has a viable cause of action until one year from the development of the *disabling* injury, rather than from the first appearance of symptoms or from the first date of treatment. *Swearingen v. Air Prod. & Chem., Inc.*, 481 So.2d 122, 124 (La.1986); *Bolden v. Georgia Casualty & Sur. Co.*, 363 So.2d 419, 422 (La.1978); *Wallace v. Remington Rand, Inc.*, 229 La. 651, 86 So.2d 522, 526 (1956); *Johnson v. Cabot Carbon Co.*, 227 La. 941, 81 So.2d 2, 5 (1955); *Mottet v. Libbey-Owens-Ford Glass Co.*, 220 La. 653, 57 So.2d 218, 219 (1952). The "time the injury develops," as interpreted to mean the date the disability develops, is usually determined as the time when it becomes clear that the worker can no longer [94-1859 La. 5] perform his or her employment duties in a satisfactory manner. *Swearingen v. Air Prod. & Chem., Inc.*, 481 So.2d at 124; *Wallace v. Remington Rand, Inc.*, 86 So.2d at 525. Thus, the "developing injury" rule has been applied not only when the injury does not manifest itself immediately, but also when the employee, after an accident in which injury is immediately apparent, continues to attempt employment duties until he or she is finally disabled from doing so.

The underlying rationale for this interpretation is that an injured employee who continues to work, despite a work-related medical condition which is painful but not then disabling, should not be penalized for attempting to remain in the work force in order to support his or her family or in the hope that the condition will improve. Wex A. Malone & H. Alston Johnson III, 14 Louisiana Civil Law Treatise--Workers' Compensation § 384 (3d ed. 1994). Requiring any injured employee, who is not yet disabled, to assert his or her claim within one year of the accident (or one year of the last payment of benefits) in order to preserve the cause of action would encourage needless litigation.

*Sevin v. Schwegmann Giant Supermarkets, Inc.*, 94-1859, pp. 4-5 (La. 4/10/95), 652 So.2d 1323, 1325-26.

Following this jurisprudence, we find no error in the trial court's decision to overrule Phoenix Pharmacy's exception of prescription.

On the issue of White's disability and inability to continue working at Phoenix Pharmacy, the record contains only White's testimony. She chose to leave the pharmacy for a job that would require her to work fewer hours at a higher hourly wage. White testified that she made this choice based on her continuing pain which

necessitated her taking large amounts of pain medication; she believed if she could rest more, she could take less medication. The new job, however, never came through, and White testified that her pain nevertheless continued to increase. White then worked a few hours a week as a bartender until the end of 2001.

The medical records submitted into evidence supported White's testimony. She had consistent complaints of pain for which she sought treatment and pain relief. We find no manifest error in the conclusion that White met her burden of proving that these symptoms interfered with her job duties, ultimately causing her to become disabled.

The trial court specifically found White's claim for indemnity benefits was unreasonably controverted; therefore, the court assessed Phoenix Pharmacy with a $2,000.00 penalty and attorney fees in the amount of $5,500.00. The court addressed the question of whether the facts, medical and otherwise, known to the employer, gave a reasonable basis to believe that compensation benefits were not due. The court found the occurrence of an accident was not seriously disputed by the employer, the medical records supported both the history of the accident and White's complaints, and there was no showing of an intervening incident which could have caused White's injury. Our review of the record reveals no manifest error in these findings. Accordingly, we conclude the award of penalties and attorney fees was appropriate.

We disagree, however, with White's contention that she is entitled to two separate penalties of $2,000.00 each, one for the employer's failure to pay temporary total disability benefits and another for the failure to pay supplementary earnings benefits. The employer was assessed a penalty for the failure to pay indemnity benefits. We cannot, in this case, say that a change in the classification of those benefits, based on White's activities, gives rise to further penalties. Therefore, we affirm the penalty awarded by the trial court.

White also contends the trial court erred in failing to tax as court costs the preparation of the trial transcript for her counsel's use in preparing his post-trial memorandum. Because there was no judgment in White's favor at the time she requested a transcript, and it was requested for a party's private use rather than for the benefit of the court, Phoenix contends there was no error in the trial court's refusal to assign the court reporter's fee as a court cost assessed to the losing party.

Under the circumstances presented in this case, we find the trial court abused its discretion in denying White's motion to tax the transcript fee as a court cost. The court ordered post-trial memoranda immediately at the close of the evidence; the parties did not ask for the opportunity to file briefs. White was required to pay the court reporter's fee of $468.25. Upon filing a motion for appeal, Phoenix Pharmacy then paid the court reporter $459.00. The claimant ultimately prevailed in this matter and has successfully defended this appeal. Accordingly, we reverse the denial of her post-trial motion to tax the transcript fee as a court cost and order Phoenix Pharmacy to reimburse her for this item of costs.

We also grant White's request for an increase in attorney fees for work performed on appeal; we hereby amend the judgment to increase the award of attorney fees by $1,500.00.

For the foregoing reasons, the judgment rendered by the workers' compensation judge is amended so as to assess the transcript cost to Phoenix Pharmacy and increase the award of attorney fees by $1,500.00. The denial of White's motion to tax the cost of the transcript is reversed. In all other respects, the judgment is affirmed. Costs of this appeal are assessed to Phoenix Pharmacy.

**AFFIRMED IN PART, REVERSED IN PART, AND AMENDED.**

6