# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-45


**DARRYL HINNARD**

**VERSUS**

**SECURITAS SECURITY SERVICES USA, INC.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 03-08907
SAM L. LOWERY, WORKERS COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

**ELIZABETH A. PICKETT**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Elizabeth A. Pickett, Judges.


**AFFIRMED IN PART; REVERSED IN PART.**


Peters, J. dissents and assigns written reasons.


Marcus Miller Zimmerman
Attorney at Law
4216 Lake Street
Lake Charles, LA 70605
Counsel for Plaintiff/Appellee:
    Betty Hinnard

Deanne Breaux McCauley
Rabalais, Unland & Lorio
5100 Village Walk, Suite 300
Covington, LA 70433
Counsel for Defendant/Appellant:
    Securitas Security Services USA, Inc.

**Pickett, Judge**.

The defendant, Securitas Security Services USA, Inc. (Securitas), appeals a judgment of an Office of Workers' Compensation Judge (WCJ) finding the claimant, Darryl Hinnard, entitled to weekly benefits based upon a 40-hour work week (the hours he was working at the job he held at the time he became unable to continue working), rather than the 24-hour work week (the hours the claimant was working at the job he held at the time of the original accident). The appellant also claims the WCJ erred in awarding the claimant court costs, as this issue had been previously decided in a consent judgment. We affirm in part and reverse in part.

## FACTS

The claimant, Darryl Hinnard, died during the pendency of this appeal and his mother, Betty Hinnard, was substituted as party-plaintiff.

The claimant underwent a double lung transplant in May 1999 for reasons unrelated to his employment. In August 2000 he resumed his employment as a part-time security guard (24 hours per week, average) for Securitas. On October 29, 2001, while working at the Royal Palace Casino, the claimant was injured when a car crashed into the casino striking him, knocking a video poker machine into him, and propelling him into a podium on the casino floor. The claimant was out of work and received compensation benefits for approximately three months, returning to work in late January 2002. For the following year, the claimant worked, for the most part, 24-32 hours per week. Beginning in April 2003, he generally worked 40 or more hours per week up until he was hospitalized in September 2003, after which time he could not return to work. While his employment record shows some exceptions, the claimant stated in his deposition that any time he took off between April and

2

September 2003 was for medical reasons. He stated that he had two surgeries, one for kidney problems and the other to have "another stent put in my lungs." He stated that he also had to take off a day or two a few times because of back pain. The claimant noted that he earned no "sick time" while working for Securitas and that when he took time off for back pain, "I never filed it."

Mr. Hinnard explained that Securitas provided security and security-related services to a number of businesses. When he started he was working solely as a security guard on a part-time basis. Beginning in April 2003 he was employed as a cashier at Vegas Magic Casino (his full-time, 40-hour per week position).

He testified that after his accident his only immediate symptom of concern was right-leg pain from his foot to his groin. Over the next month his symptoms increased to include low back pain, pelvic pain and numbness in the right leg. These symptoms eased with rest and medication and by the end of January 2002, he was released to return to work. Shortly thereafter, his symptoms returned. The claimant stated that his position as a security guard was less taxing than the position he ended up working full-time, that of a cashier.

The WCJ found that the claimant's

new job [as cashier] involved standing in one place primarily, or at least being on his feet, and the pain increased as did his anxiety attacks to the point where he simply gave out and could not work anymore and the date given by him is September the 2nd of 2003. When this, [what] I'm going to call [the] ultimate aggravation occurred, his pay was higher because he was doing a different job; but the aggravation here seems to be a direct result of the primary accident.

The average weekly wage is calculated using as a base the amount of money being paid at the time the injury occurred *which caused his incapacitation or inability to work.* An aggravation should be treated substantively as an injury in the unique—singularly unique fact pattern in which we are dealing with here. When the injury becomes fullblown

3

an a person works as long as possible—he worked as long as possible, he was being paid as a full-time employee.

The defense argues that the proper rate of compensation should be based upon the wages the claimant was earning at the time of the original accident, October 29, 2001. Counsel for the claimant argues that the last day the claimant worked, September 2, 2003, constitutes a new accident, so the proper rate of pay should be base upon what he was earning at that time.

We agree with the WCJ. In a situation such as the one presented here, there is no need for a finding of a "second" accident. As the Louisiana Supreme Court explained in *Sevin v. Schwegmann Giant Supermarkets*, 94-1859, pp. 4-5 (La. 4/10/95); 652 So.2d 1323, 1325-26 (second emphasis ours):

> Workers' compensation laws are to be liberally interpreted in favor of protecting workers from the economic burden of work-related injuries. *Lester v. Southern Casualty Ins. Co.*, 466 So.2d 25 (La.1985); *Parks v. Insurance Co. of North America*, 340 So.2d 276 (La.1976). In furthering that policy, this court has construed La.Rev.Stat. 23:1209 A's term "the time the injury develops" liberally in cases in which the worker attempts to continue working until no longer able to perform his or her employment duties. Wex A. Malone & H. Alston Johnson III, 14 Louisiana Civil Law Treatise—Workers' Compensation § 384 (3d ed. 1994). This court has consistently held that an employee who suffers a work-related injury that immediately manifests itself, but only later develops into a disability, has a viable cause of action until one year from the development of the *disabling* injury, rather than from the first appearance of symptoms or from the first date of treatment. *Swearingen v. Air Prod. & Chem., Inc.*, 481 So.2d 122, 124 (La.1986); *Bolden v. Georgia Casualty & Sur. Co.*, 363 So.2d 419, 422 (La.1978); *Wallace v. Remington Rand, Inc.*, 229 La. 651, 86 So.2d 522, 526 (1956); *Johnson v. Cabot Carbon Co.*, 227 La. 941, 81 So.2d 2, 5 (1955); *Mottet v. Libbey-Owens-Ford Glass Co.*, 220 La. 653, 57 So.2d 218, 219 (1952). The "time the injury develops," [i]s interpreted to mean the date the disability develops, [and] is usually determined as the time when it becomes clear that the worker can no longer perform his or her employment duties in a satisfactory manner. *Swearingen v. Air Prod. & Chem., Inc.*, 481 So.2d at 124; *Wallace v. Remington Rand, Inc.*, 86 So.2d at 525. *Thus, the "developing injury" rule has been applied not only when the injury does not manifest itself immediately, but also when the employee, after an accident in which injury is*

4

*immediately apparent, continues to attempt employment duties until he or she is finally disabled from doing so.*

The underlying rationale for this interpretation is that an injured employee who continues to work, despite a work-related medical condition which is painful but not then disabling, should not be penalized for attempting to remain in the work force in order to support his or her family or in the hope that the condition will improve. Wex A. Malone & H. Alston Johnson III, 14 Louisiana Civil Law Treatise—Workers' Compensation § 384 (3d ed. 1994). Requiring any injured employee, who is not yet disabled, to assert his or her claim within one year of the accident (or one year of the last payment of benefits) in order to preserve the cause of action would encourage needless litigation.

In the case sub judice the claimant continued to work "despite a work-related medical condition which [was] painful but not then disabling." *Id.* He took on new duties and began working 40 hours per week before the time when it became clear that he could no longer perform his employment duties. We will not penalize the claimant for attempting to remain in the work force in order to earn enough money to pay for the medication he needed to take because of his lung transplant.

Accordingly, for the reasons stated, the judgment of the WCJ is affirmed in so far as it awards the plaintiff benefits based upon a 40-hour work week. The judgment is reversed in so far as it awards the plaintiff costs, as the award was previously disposed of by the judgment rendered March 22, 2006. However, the defendant, will bear the costs of this appeal.

**AFFIRMED IN PART; REVERSED IN PART.**

NUMBER 07-0045

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

DARRYL HINNARD

VERSUS

SECURITAS SECURITY SERVICES USA, INC.

PETERS, J., dissenting.

In affirming the workers' compensation judge's judgment, the majority concludes that the weekly benefit should be calculated, not as of the date of the accident, but as of the date the injuries sustained in the accident developed into a disabling injury. I respectfully disagree with this conclusion.

Louisiana Revised Statutes 23:1021, which sets forth the definitions to be applied to the terms at issue in this litigation, contains an *apparent* conflict between calculation of benefits for full-time versus part-time employment. Both La.R.S. 23:1021(12)(a)(i) and (ii), which apply to full-time employees and those who were offered full-time employment,[1] use the "date of the accident" as the reference point in calculating the weekly benefit due an injured employee. On the other hand, La.R.S. 23:1021(12)(a)(iii) provides that "[i]f the employee is paid on an hourly basis and the employee is a part-time employee, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the *date of the injury*"

_____

[1]Louisiana Revised Statutes 23:1021(12)(a)(i) refers to the situation where the employee is paid on an hourly basis and is employed for forty or more hours per week. Louisiana Revised Statutes 23:1021(12)(a)(ii) refers to the situation where the employee is paid on an hourly basis, is offered forty or more hours per week, and chooses to work less than forty hours per week.

shall be used to calculate the weekly benefit.  (Emphasis added).[2]  While the legislature was not consistent in its statutory language, a reading of the other definitions found in La.R.S. 23:1021 causes me to conclude that this inconsistency in language does not change the fact that, in this case, the day of the accident is the date to be used for calculation of benefits.

Louisiana Revised Statutes 23:1021(1) defines an accident for workers' compensation purposes as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and *directly producing at the time objective findings of an injury* which is more than simply a gradual deterioration or progressive degeneration."  (Emphasis added).  Additionally, La.R.S. 23:1021(8)(a) states that "'[i]njury' and 'personal injuries' include only *injuries by violence* to the physical structure of the body and such disease or infections as naturally result therefrom."  (Emphasis added).  In this case, the injury to Mr. Hinnard was caused by the violence associated with the accident of October 29, 2001.  His ultimate *disability* arose later as a result of that injury.

I would reverse the workers' compensation judge's judgment and would calculate the benefits due based on Mr. Hinnard's wages for the last four weeks before the accident of October 29, 2001.

---

[2]It is not disputed that Mr. Hinnard was a part-time worker at the time of the October 29, 2001 accident.