DEES v. LOUISIANA OIL REFINING CORPORATION et al. *

No. 5061.

Court of Appeal of Louisiana. Second Circuit.

June 29, 1935.

Wm. C. Boone, of Shreveport, for appellant.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellees.

TALIAFERRO, Judge.

Plaintiff, an employee of the Louisiana Oil Refining Corporation, was injured November 15, 1931, while performing the duties of the contract of hiring between them. He was sitting on a swinging scaffold, 25 or 30 feet from the ground, calking a tank. The scaffold turned over, precipitating him to the ground. He landed on his feet, and fell backwards upon a piece of piping or a large metal valve. It was conceded by the employer and its insurer, Fidelity & Casualty Company of New York, that the disability resulting from the fall was total. Compensation at the rate of $20 per week was paid him for 38 weeks, or to August 7, 1932, at which time payments were discontinued. This suit was filed on October 3d against the oil company and its insurer to recover additional compensation at said rate for 400 weeks, less amounts paid, and for $250 for medical, physicians', and hospital bills incurred. Thereafter payments were resumed and continued for an additional 96 weeks, or to July 13, 1934. The case was then put at issue by filing of answers, and tried the following November.

The specific injuries of which plaintiff complains are spraining, bruising, and wrenching his lower back and pelvic bones, "possibly causing traumatic arthritis of the lower lumbar spine and sacro-iliac joints"; displacement of vertebræ with "more or less injury from his head down to his legs"; all of which, it is averred, renders him totally and permanently disabled to do any work of a reasonable character.

Defendants' position is that plaintiff has completely recovered from all of the injuries caused by the fall nearly three years prior; and if now suffering from any disability, it is not traceable to nor is it an aftermath of the accident. They aver that $297 was paid by them for medical attention to plaintiff.

The demands of plaintiff were rejected and he prosecutes this appeal.

There can be no doubt that the fall of 25 or 30 feet to the ground jarred plaintiff's body severely. Landing on his feet with suddenness of stop, necessarily put upon the bones of the body, especially those of the pelvic region and the spinal column, considerable strain. He was promptly transferred to a sanitarium in the city of Shreveport, a short distance from where the accident happened, and there given treatment by competent doctors for several days at defendants' expense. And strange as it may seem, not one of the doctors who rendered first aid treatment and treatment off and on for several months after plaintiff's discharge from the sanitarium was called by either side to give testimony in the case. The doctors who did testify were not called on

to examine or X-ray plaintiff until two years or more after the accident.

It fairly well appears that two or three of plaintiff's ribs were fractured and some damage done to a vertebra or two by the fall, and it is equally well established that these injuries had completely healed before the case was tried. We experience no difficulty in reaching the conclusion that so far as the original injuries are concerned plaintiff suffers no disability directly traceable to them. It is his contention that an arthritic condition has set up in the lumbar section of the spinal column, and probably in the sacroiliac joints, the aftermath and collateral, if not direct, result of the original trauma. Whether this alleged arthritic condition actually exists is a controverted question about which the doctors by sides sharply differ; and if such is present, whether there is causal connection between it and the original injuries is likewise a matter of serious dispute.

This case reflects to an extreme degree the lamentable condition of which we have heretofore taken note and briefly commented on in cases decided by us, to wit, hopeless and wholly irreconcilable contradictions, mainly by sides, in the testimony of an array of reputable physicians and radiologists. In point of numbers and directness of contradictions the testimony of the medical experts in this case equals, if it does not surpass, that appearing in any case heretofore presented to us. We are, however, to some extent aided in approaching this maze of conflicting expert evidence by the fact that the lower court appointed two reputable physicians and one radiologist, before the case was tried, to make close physical examination of plaintiff and to take necessary X-ray pictures to determine his true physical condition and whether or not he is suffering from the ailments he asserts afflict him. Their report and testimony is a part of the record. They found no evidence of arthritis in plaintiff, and, while detecting a small degree of stiffness in the lower part of his back, were of the opinion he was able to perform manual labor. In these conclusions they are supported by the testimony of the several physicians and radiologists who gave evidence for defendant. On the other hand, plaintiff's physicians, several in number, are positive he is totally disabled. They are supported by half a dozen lay witnesses who have intimate and frequent contact with plaintiff. Sixteen physicians and radiologists gave testimony in the case. Their testimony is reviewed and summarized by the judge a quo in written reasons for judgment. It would unnecessarily prolong this opinion to incorporate a summary of this evidence herein or copy that of the lower court. A question of fact only is involved.

Paragraph 3 of section 9 of the Workmen's Compensation Law, Act No. 20 of 1914, as amended by Act No. 38 of 1918, p. 57, provides:

"If there be any dispute thereafter as to the condition of the employee, the Court, upon application of either party, shall order an examination of the employee to be made by a medical practitioner appointed by the Court. The fees of such examiner shall be fixed by the Court at not to exceed ten dollars, and shall be paid in advance by the applicant. Such medical examiner shall report his conclusions from such examination to the Court, and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this act."

This provision was no doubt designedly embodied in the law to be availed of by the court, on its own motion, or at the instance of either litigant, to meet a situation as we are presently dealing with. It is not intimated that the physicians appointed by the court to examine plaintiff are not competent, impartial, and disinterested. Their report stands as prima facie evidence of the facts therein contained, and, although compensation was paid by plaintiff by defendants for nearly three years, that fact does not cut them off from taking the position that he no longer is entitled to compensation because of the disappearance of the former disability. The burden is on the plaintiff to prove his right to further compensation. Continuation of disability, once admitted, is not presumed to have extended beyond the term for which payments have been made. Savin v. T. Smith & Sons (La. App.) 143 So. 728; Norris v. Louisiana Central Lbr. Co., 7 La. App. 489; subdivision 5 of section 18 of Workmen's Compensation Law (Act No. 20 of 1914, as amended by Act No. 85 of 1926, p. 123).

So, in view of the facts of this case, covered above, we do not feel warranted in saying that error was committed

by the trial judge, whose desire to give plaintiff the benefit of every right accorded by law is clearly reflected from the record in the case. We could give no solid reason for reversing his findings on the facts; and, we will add, that, as in this case, where a commission of competent and reputable physicians has been appointed by the court to ascertain a plaintiff's condition, and a report thereon is made, supported by the testimony of the members of the commission, error of the trial judge in basing judgment to a large extent, if not entirely, upon such report and testimony, would have to appear unusually manifest to warrant a reversal of his findings.

Plaintiff was examined and X-rayed by physicians selected by defendants at Dallas, Tex., to which place he had moved. The depositions of these physicians were taken by commissions. Copies of the interrogatories propounded to them were duly and timely served upon plaintiff or his counsel. No cross interrogatories were submitted, but plaintiff submitted in writing objections to many of the questions propounded. Mainly, these objections were leveled at the form of the questions objected to and that they were leading. When the depositions were offered in evidence, substantially the same objections were interposed against their admissibility, and, in addition, it was urged that they were not admissible because no rule had been sued out to show cause why they should not be received in evidence. These objections were overruled and the depositions admitted subject to the objections.

"The court below has no right to receive certain depositions offered in evidence without first considering and passing on the objections to them made by counsel." Verret v. Bonvillain, 32 La. Ann. 29.

The court, in its written reasons for judgment, discussed briefly the testimony objected to and ruled it was admissible.

■ We think several of the questions open to criticism, and that plaintiff's objections thereto well founded. For instance, after asking Dr. Williams two or three preliminary questions touching his qualifications and the fact that he had made an examination of plaintiff, the following question was propounded to him:

"Interrogatory No. 4: Does your letter of February 21st, 1934, addressed to Fidelity and Casualty Company, Dallas, Texas, correctly show your findings as of that date? If so, please annex a copy of your letter of February 21st, 1934."

No further questions were asked. The letter referred to in this question, or a copy, was not attached to the application for commission or the interrogatories. Presumably it had remained in the doctor's private files. Certainly, plaintiff or his counsel had not seen it and had no knowledge of its contents, therefore were not in a position to cross-examine the doctor concerning its contents. For these reasons, it is urged that the answer to this question should not be admitted in evidence; nor the letter itself. Interrogatories of practically the same import and nature were propounded to two other physicians. It is our opinion, for the reasons urged by plaintiff, the depositions given in response to these questions were inadmissible, and also the letters.

■ It is not necessary, as a condition precedent to the admissibility of depositions taken under commission, that a rule be taken on the opposing side, prior to trial, to show cause why the same should not be declared admissible. International Accountants' Soc. v. Montreuil, 6 La. App. 831.

Article 439 of the Code of Practice provides that such a rule may be taken. It is not mandatory; and when this course has been pursued, only irregularities in executing the commission may be inquired into. Code of Practice, art. 439.

However, ruling out the objected to evidence in the final analysis does not affect a determination of the case. It is with defendants without this evidence.

■ Leading questions are always permissible when experts are being interrogated as witnesses.

For the reasons herein assigned, the judgment appealed from is affirmed.