Plaintiff, the surviving widow of Fred F. Kilman, sued his employer, Ray L. Smith, doing business as Ray L. Smith Construction Company, and the carrier of his workmen's compensation insurance, the Travelers Insurance Company, to recover workmen's compensation, as dependent widow, at the rate of $20 per week for 300 weeks. The deceased was injured while performing the duties of his employment on August 16, 1944 and died therefrom on September 2d, following. The sole issue tendered for decision is that of dependency of plaintiff upon the deceased when he died. It is alleged that plaintiff was not living with the deceased as his wife when he was injured and at time of his death *Page 500 
and was not then dependent upon him for support.
There was judgment for plaintiff as prayed for by her, and defendants appealed.
Plaintiff and the deceased were married in June, 1940. The marriage was without issue. It appears that he had no regular vocation, and, with his wife, moved from place to place in the states of Illinois and Michigan, and generally would remain at one place so long as he was able to procure employment there. So far as the record discloses their marital relations were normal until they took up residence in Pontiac, Michigan in 1943. There, according to testimony of some in-laws, she began to "run around" with other men and to drink to excess. He objected and they, under strained relations, separated in July of that year. This continued for some four months. A reconciliation between them endured until some time in April, 1944, when again they separated for the same cause that provoked the first one. Plaintiff first left the matrimonial domicile. After checking out of and surrendering their apartment, the deceased lived with his kinsfolk until July 10, 1944. On that date he left for Louisiana and in due time stopped at Many, where he was injured and died.
The testimony convinces us that soon after the last separation, plaintiff began open cohabitation in Pontiac with a man named Chester Van Horn, which relation continued for a time not definitely shown. She was often seen in his company about Pontiac and having so quickly, after leaving her husband, established immoral relations with Van Horn, it is not unreasonable to think that such relations, to the deceased's knowledge, existed prior to the separation. Van Horn was evidently the third point in the triangle. However, the testimony supports the conclusion that after the last separation Van Horn was not the sole recipient of her attentions. Other gentlemen friends with whom she frequently imbibed to excess were her regular companions in saloons, beer gardens and other places of similar character.
[1] Testimony to prove plaintiff's conduct and questionable mode of living so soon after leaving her husband the second time was admissible as evidence because from it strong inferences arise to support the contention advanced by defendants to the effect that after the first separation plaintiff continued to engage in the same sort of conduct as that which caused the separation, and a fortiori, the second one. And to know the cause of the last separation goes far toward enabling us to determine whether it would likely be of a temporary or permanent character. Self-respecting men do not generally condone the immoral practices of a wife more than once; relatively few of them do so even once.
Plaintiff testified that she did not know why her husband left her and that she then possessed only $6 in cash. She well knows why they separated. She left the matrimonial domicile first. What transpired immediately before this parting only she knows. She had good reason to believe that the separation was, in all probability, permanent and that she had no good reason to think he would continue to provide for her because she very soon thereafter sought and procured work at fair wages, something she never did prior to that time.
There is much evidence in the record, interwoven with many circumstances, to support the defense of lack of dependence. It is of rare occurrence that the husband who ceases to live with his wife because of her infidelity will continue to support her; it is contrary to human nature.
Plaintiff, before the reconciliation following the first separation, told one of deceased's sisters that she did not know if she would again live with her husband; that things would not be the same, and that she did not care for him as she once did.
In her application for employment with a foundry on June 8, 1944, plaintiff stated that she was married but separated from her husband.
[2] The fact that plaintiff sought and procured gainful employment immediately after the last separation clearly indicated that she knew she could no longer look to her husband for support. While they were living together she never sought and never performed work for wages. *Page 501 
The deceased, after the last separation, lived with his sisters and worked regularly but did not provide plaintiff with any money; in fact, did not see her at all prior to leaving for Louisiana. He did not send her one penny while he was in Louisiana and did not even advise her that he was going to that state. She never heard from him while he was in Louisiana, and he did not advise her of his injury but did advise one of his sisters. He was dead and buried quite awhile before plaintiff knew of it.
Plaintiff testified that ofttimes the deceased would have to leave the matrimonial domicile to earn wages and that in each instance on his return he would pay up all of the grocery and other bills she had incurred during his absence. She intimated that she thought he would repeat this practice after coming to Louisiana. There existed no ground for her to so think. In the instances he would leave her to procure work, he would not go so far away and she always knew his whereabouts. He would invariably return to her after an absence of not more than two or three weeks.
One of the deceased's sisters reached his bedside a few days after he was injured. He then had all of his pay checks save one. He had his sister to cash the checks and hold the money for him. He did not ask her to send any part of it to plaintiff. The money from the check that he cashed had been used to pay for board, room rent, etc., except a small portion which was in his billfold and which he also gave to his sister.
[3, 4] A wife who is living with her husband at the time of his accident and death is conclusively presumed to be wholly and actually dependent upon him for support. Act No. 20 of 1914, Section 8, subsection 2(B), as amended by Act No. 242 of 1928, p. 386. If, at the time of the accident and death of the husband, he and his wife are in fact living separate and apart, the presumption of dependence does not apply. It then becomes a question of fact, the establishment of which, in case of contest, devolves upon the wife. She is required to prove the fact by a preponderance of the evidence. Plaintiff has not done this; in fact, the defendants have proved that plaintiff was earning very good wages during the interim between the last separation and the death of her husband and she admits that he made no contribution toward her support and subsistence during that period.
[5] It is not required, as contended by plaintiff, that to escape payment of compensation to a wife who is living separate and apart from her husband, who is killed in the course of his employment, that the employer prove that the separation was by "mutual consent". Separation more often occurs without mutual consent than with it.
[6] Plaintiff objected to the admissibility of testimony of her in-laws, bearing upon the cause of the two separations, on the ground that it was mostly hearsay. Ordinarily, such objection would be good, but testimony of that character has been admitted in some cases involving the right to recover workmen's compensation under the liberal provisions of subsection 4 of Section 18 of the Workmen's Compensation Law, as amended by Act No. 85 of 1926, p. 122, which reads as follows: "* * * The judge shall not be bound by technical rules of evidence or by technical rules of procedure other than as herein provided, but all findings of the fact must be based upon competent evidence, * * *." See Arrington v. Singer Sewing Machine Company, La. App., 16 So.2d 145.
[7] The weight and effect to be given such testimony, of course, shall be determined by the court.
It is not necessary in this case to predicate judgment upon the hearsay testimony which, in the main, relates to the cause of the first separation. Such testimony could be entirely ignored and there would still remain abundance of proven facts, inferences and pertinent circumstances to warrant rejection of the claim of dependency asserted by the plaintiff.
For the reasons herein given, the judgment appealed from is reversed, and plaintiff's suit is hereby dismissed at her cost. *Page 502