REGAN, Júdge.
Plaintiff, Edward Brown, asserting that he was employed as a carpenter, instituted this suit against the defendant, Hartford Accident & Indemnity Company, the compensation insurer of his employer, Melvin W. Mathes, endeavoring to recover workmen’s compensation at the rate of $35 per week for 400 weeks for total and permanent disability resulting from injuries to his right foot incurred when he fell from a ladder while working as a carpenter for Mathes and the imposition of penalties for arbitrary refusal to pay compensation to him.
Defendant answered and admitted the occurrence of the accident, but asserted that plaintiff was injured while working on the home of Mathes and therefore plaintiff’s injury is not compensable.
From a judgment dismissing plaintiff’s suit, he has prosecuted this appeal.
The chronological facts appear to be relatively undisputed. The plaintiff had been employed as a daytime porter for approximately 40 years by the John E. Mathes firm, which is engaged in bookbinding, and his recent wages as an employee thereof amounted to $29.75 per week.
During the war years when labor was scarce plaintiff secured an additional nighttime job as a porter with the National Bank of Commerce for which he was paid $40 per week, and he was so employed at the time of the trial of this case by the lower court.
Melvin Mathes, the proprietor of the bookbindery, also owned seven pieces of real estate in New Orleans, which he rents and from which he derives a monthly income of about $1,145. He testified that as the necessity arose he used plaintiff as a “handyman” to make repairs to these properties.
On Monday, November 14, 1955, plaintiff, who was then working as a porter at the bookbindery and part of the night at the National Bank of Commerce, was instructed to report to a building owned by Mathes in 1228 Third Street in which Mathes resided and also rented an apartment therein. Plaintiff related that he was to assist in repairing its exterior just as he had done about four months prior to this accident for a period of about 13 months on another apartment owned by Mathes in First and Carondelet Streets. He testified that he was to be paid $1.50 per hour, the same wages he had been paid on the prior job. However, this fact is disputed by the defendant, who insists that this was merely an odd job to be performed for Mathes and was covered by his weekly wages as a porter for the bookbinding firm.
In any event, while he was working from a ladder ripping rotten weather boards from the structure, his ladder slipped causing him to fall and break the os calcis of his right heel. As we said hereinabove, the building in 1228 Third Street was the residence of Melvin Mathes, but it also contained a rental apartment, *813 and it was while plaintiff was working on this portion thereof that the accident occurred.
Plaintiff was treated by Dr. Irving Cahen, orthopedist, from November 18, 1955, until January 14, 1957, at which time Dr. Cahen expressed the belief that the plaintiff had reached his maximum improvement and could resume his work as a porter although he had incurred as a result of the accident a permanent partial disability.
Plaintiff was paid compensation for 59 weeks at the rate of $19.34 per week, which represents approximately 65% of his salary which he earned while employed by the bookbindery.
On December 20, 1956, plaintiff fully resumed his work as a porter for the National Bank of Commerce, but contends that he can no longer perform either as a porter for the bookbindery or as a carpenter which trade he insists he was pursuing when the accident occurred.
The plaintiff related that while performing the light work of .office porter, he suffers pain and swelling in the area of his injury, and he could not perform this type of work for the bookbindery because of the existence of uneven working surfaces therein and also because he could not handle any heavy objects or make deliveries to the customers thereof.
Plaintiff contends that all the requirements for recovery of compensation in conformity with the statute have been met; that plaintiff was performing the hazardous work of repairing a revenue producing dwelling when injured and he was engaged therein in furtherance of his employer’s additional business, which consists of owning, maintaining, and renting apartment buildings, and that as a result of the accident he is totally and permanently disabled from performing the work of a carpenter, which plaintiff asserts was his occupation when the accident occurred.
Defendant on the other hand admits that compensation was paid but points out that it was never legally due to this plaintiff. At the time of his injury he was engaged as a handyman to repair a part of Mathes’ residence, which employment was completely separate and distinct from the bookbinding business by which plaintiff had been regularly employed for a period of approximately 40 years with the exception of 16 months; and that Mathes merely engaged plaintiff to repair a rental unit which formed part of his own dwelling and he was not engaged in the repair of this property as a “trade, business, or occupation” when the accident occurred; therefore, the employer is not liable to plaintiff for the payment of any compensation whatsoever.
The only question posed for our consideration is whether Mathes was engaged in the repair of the properties which he owned as a “trade, business, or occupation” in conformity with the re* quirements of the statute.[1]
There is no doubt from an examination of the record that Mathes was engaged in both the bookbinding business and in the business of leasing or renting real property, and it is not required by the statute that the business of the employer be exclusive for one may have several trades, businesses, or occupations, but to become liable for compensation he must be actually so engaged in the repair of his property so that the work performed thereon would be of that character as to constitute a trade, business, or occupation, and it is not enough that this work should be hazardous if it be not also incident to or in the course of the “trade, business, or occupation” of the employer.[2]
Wex S. Malone, Professor of Law, Louisiana State University, has fully dis *814 cussed the problem posed by the above question and in connection therewith fully expressed our opinion hereof when he asserted :
“The Compensation Act does not extend to injured employees unless their work is a regular part of the business, trade or occupation of the employer. This requirement is separate from and in addition to the requirement concerning the hazardous nature of the business and the employment. The failure of the courts clearly to recognize this separation in some of the decisions has given rise to confusion.
“This special requirement expresses a part of the underlying philosophy of the compensation principle. The business of the employer is expected to bear the cost of the risk of injury to those who serve the business. Therefore, only so long as the work of the employee is a part of the business of the employer is the application of compensation justifiable. At times this is obvious. Although a factory operator may be required to satisfy the claims of those workers who are injured in his plant, it does not follow that he should be made liable without reference to fault for accidents that befall the yardman who uses a power mower at his home. Neither must he pay compensation to the handyman who repairs or remodels his house. In all such cases the work of the employee may be fairly characterized as hazardous, and the same is true of the business of the employer, The fact remains, however, that the employment is not a part of the business, and for that reason alone compensation is not appropriate.
“It follows from what has been said that the courts are faced with the necessity of determining in all doubtful cases which employments are part of the employer’s business, and which are not.
* * * * * s(c
“The compensation liability of a person who, although not engaged in the trade of building or repairing structures, nevertheless derives his income from renting or financing homes or buildings, has not been conclusively settled by the decisions. The first case of this type was Jarrell v. Ewing,91 [3] decided by the Court of Appeal for the Second Circuit. Defendant was a physician who employed claimant to remodel a dwelling for the purpose of making it suitable for renting. This apparently was the only property of this nature owned by defendant. Compensation was refused.
“The Jarrell case might have been explained on the theory that the defendant was a physician by profession and was not to- be regarded as engaged in the business of renting houses.93 The court, however, was explicit in its statement that recovery would not be allowed even if this were his principal business. This position was reaffirmed in the latter decision, White v. Equitable Real Estate Board,93 [4] in which defendant was a real estate operator and the rental of its own property constituted a major part of its operations. In McAllister v. Peoples Homestead & Savings Association94 [5] the Court of Appeal for the Second Circuit refused to impose compensation liability upon a loan association which rented a large number of houses acquired through foreclosure. The court emphasized that the houses upon which the work was done were the property of defendant, and that the extensiveness of its activities was *815 immaterial. However, in Wood v. Peoples Homestead & Savings Association95 [6] another employee sought compensation against the homestead association which was the defendant in the McAllister case. In this suit it was revealed that the association maintained an extensive repair department through which it expended five thousand dollars each month on the upkeep and remodelling of houses. It further appeared that in many instances the properties on which repairs were made were mortgaged in favor of the association, but that the mortgages had not been foreclosed. In such instances the repairs were charged to the mortgagor through an addition to the outstanding loan. The court seized upon this difference to distinguish the McAllister case, and it allowed compensation. * * *
“ * * * The Act expressly provides that work in any of the construction trades is hazardous. [Therefore]
******
í< * * * Tfo only pertinent question, then, is whether or not this work is to be regarded as a part of the business. If it is to be so regarded, then there can be no serious question that the business is thereby made hazardous. If, on the other hand, this work is not a part of the employer’s business, then it is wholly immaterial whether the business is or is not hazardous, for the employee is not entitled to compensation in either event.” [7]
In consideration of the foregoing rationale, we have carefully examined the record and are forced to conclude therefrom as a fact that the repair of the dwelling in question which also contained a unit renting for $25 per month was not the regular “trade, business, or occupation” of the employer. The record simply reveals that from time to time as the property required repairs due to the usual wear, tear, and decay, Mathes employed the plaintiff separately, or together with several other workmen, to make these repairs, and we are unable to reason therefrom that this constituted a part of the “trade, business, or occupation” of Mathes so as to make him or his insurer liable to the plaintiff for the payment of compensation.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. LSA-R.S. 23:1035.

. McMorris v. Home Indemnity Insurance Co., 1958, 236 La. 292, 107 So.2d 645, 647.

3. 1928, 7 La.App. 502.

4. 1932, 18 La.App. 714, 139 So. 45.

5. La.App.1936, 171 So. 130.

6. La.App.1937, 177 So. 466.

. Malone, Louisiana Workmen’s Compensation Law and Practice, § 102 (1951).