Marjorie Atkinson MANUES, in her own behalf and for and in behalf of her two minor children, Steve Anthony Manues and Marjorie D. Manues, Plaintiffs,

v.

SHIPS AND POWER, INC. and Indemnity Insurance Company of North America, Defendants.

Civ. A. No. 8712.

United States District Court
E. D. Louisiana,
New Orleans Division.

Feb. 12, 1960.

Chaffe, McCall, Phillips, Burke & Hopkins, Alfred C. Kammer, New Orleans, La., for plaintiffs.

Lemle & Kelleher, H. Martin Hunley, Jr., New Orleans, La., for defendants.

J. SKELLY WRIGHT, District Judge.

Plaintiffs are the widow and surviving children of Frank Manues, whose body was found on February 4, 1958, in the

cab of a pickup truck owned by his employer. In the cab of the truck was also found an improvised heater consisting of two cans filled with burned charcoal. The coroner's verdict was accidental death due to carbon monoxide poisoning. In this action plaintiffs sued Manues' employer and insurer for death benefits, including funeral expenses, under the Louisiana Workmen's Compensation Statute.[1]

Ships and Power, Inc., the employer, is engaged in purchasing for resale surplus engines, principally from the United States government, and during the latter part of 1957 and the early part of 1958 maintained an office and warehouse in New Orleans, from which its operations were conducted into other states. Its president, Robert L. Benjamin, owned 51 percent of the stock and controlled the operation in the New Orleans office.

Frank Manues was employed as a truck driver. His duties were to drive trucks, principally one or two large tractor trailer trucks which his employer owned, picking up and delivering engines in different parts of the United States. When he was not driving, he performed miscellaneous odd jobs of manual labor around the office and warehouse, such as cleaning up and helping to move equipment.

On Thursday, January 30, 1958, Manues returned to New Orleans from a three-week trip through the East, driving his employer's tractor trailer. His first-born child, who lived with his wife and her parents in Ratio, Arkansas, had been ill during this three-week period. On Friday afternoon, January 31, 1958, at the close of the working day, Manues asked Robert L. Benjamin to lend him a company pickup truck to drive to Ratio, Arkansas, to visit his wife and child. This permission was granted, provided Manues paid the expenses en route.

It was the business practice of Ships and Power, Inc. to make out a trip ticket whenever a driver took a truck out on company business and to give him money for trip expenses in the form of several checks made payable to the order of the driver. A copy of the trip ticket was kept in the office and an accounting would be made by the driver upon his return. No trip ticket was made out for Manues on January 31, 1958, and no money was advanced him to cover the contemplated trip to visit his family.

Manues arrived in Ratio in the pickup truck at about 7:00 p. m., Saturday, February 1, 1958, and left at about 7:00 p. m. the next day, Sunday, February 2nd, headed for New Orleans. It was cold. The truck had no heater and Manues improvised the charcoal stoves above described. As stated, his body was found in the cab of the truck parked on the shoulder of a road near Canton, Mississippi, early Tuesday morning, February 4, 1958.

■ Plaintiff has sought to show, through hearsay testimony[2] of herself, her family and an Arkansas funeral director, that Manues told them he had been to the Red River Arsenal at Texarkana to check some motors for his company and that his employer had given him permission, after checking the motors, to visit his family. There was also some testimony from the same Arkansas funeral director, as well as from a funeral director from Mississippi, both of whom, incidentally, incurred expenses incident to handling the body of Frank Manues, to the effect that Robert L. Benjamin told them via telephone after Frank Manues' body was found that Manues had been to the Red River Arsenal checking motors and that he had been given permission to visit his family en route home. Robert L. Benjamin denies making these statements to the funeral directors.

■ While it is true that under Louisiana law hearsay testimony is ad-

1. LSA–R.S. 23:1021 et seq.

2. Hearsay evidence is admissible in a Louisiana workmen's compensation suit. LSA–R.S. 23:1317; Clifton v. Arnold, La.App., 87 So.2d 386; Kilman v. Smith, La.App., 28 So.2d 499; Arrington v. Singer Sewing Mach. Co., La.App., 16 So. 2d 145; Butler v. Washington-Youree Hotel Co., La.App., 160 So. 825.

852

missible in workmen's compensation cases, it does not follow that such testimony must necessarily be given the same weight as testimony not afflicted with this vice, particularly where the hearsay comes from persons affected with an interest.[3] The interest of the plaintiff and her family in the outcome of these proceedings is obvious. Moreover, the hearsay testimony, even though it is supported by the alleged statements against interest attributed to Benjamin, is incredible.

In order for plaintiff to recover under the Louisiana Workmen's Compensation Statute, the death in suit must have arisen "out of and in the course of his employment." LSA–R.S. 23:1031. While the Louisiana Workmen's Compensation Statute is to be construed liberally in favor of claimants, this liberality may not be extended to include within the coverage of the Act a death which occurred on a personal and private mission of the deceased.

Judgment for defendants.