FRUGÉ, Judge.
Plaintiff filed this workmen’s compensation suit against Hardware Mutual Casualty Company, the insurer of the plaintiff’s employer, Farm Oil Truck & Tractor, Inc., to recover total permanent disability payments under the compensation statute. While admittedly working within the scope and course of his employment, Hoffpauir injured his left arm in a fall from a tractor on October 7, 1963. The arm was X-rayed by a Dr. Bergeron but the X-rays did not reveal a fracture or other injúry to the bones of the arm. Additional X-rays were taken the following day and these X-rays disclosed a fracture of the radius between the wrist and the elbow. On Dr. Bergeron’s recommendation, the plaintiff was sent to an orthopedist, Dr. Webre, and by report dated October 20, 1963, Dr. Bergeron reported to the defendant that the plaintiff was disabled, and compensation was begun.
As shown by Dr. Webre’s reports to the insurer, a closed reduction of the fracture was performed on October 10, 1963, and the plaintiff’s arm was placed in a long arm cast. X-rays taken several weeks later indicated a poor alignment of the fractured bones and open reduction of the fracture was performed on October 24, in which the bones were realigned and secured in place by the insertion of a metal plate affixed to the bone by four screws. The plaintiff was hospitalized for approximately three weeks and, after discharge, remained in a long arm cast until mid-January. The cast had to be changed several times during this period because of persistent drainage from the incision. In January physical therapy was instituted in order to overcome considerable stiffness and loss of motion in the arm and shoulder. The plaintiff continued seeing Dr. Webre and, in a report dated August 19, 1964, the doctor reported that:
“It appears to this examiner that this patient, in spite of the rather complicated post-operative course, in that the patient had considerable soft tissue tightening of the musculature in the area of the fracture site, as well as binding down of all the soft tissue structures about the shoulder, elbow and hand, he has received maximum benefit of physical therapy at this time. It is thought that he should be able to return to doing light duty at his previous employment at this time. As seen in the above measurements, he has some limited range of motion of the left shoulder as well as of the elbow and very mild limitation at the wrist and hand. On a temporary partial basis, this examiner would give this patient a 25 per cent impairment of the left upper extremity at this time which will probably improve with passage of another six months.”
*590 In an undated memorandum introduced by the defendant and apparently signed by Dr. Webre, the doctor stated that he informed the plaintiff that he could return to work when he was last seen in his office on August 14, 1964. This memorandum was sent to the plaintiff’s employer, Farm Oil Truck & Tractor, Inc.
After his discharge by Dr. Webre the plaintiff consulted another orthopedic surgeon, Dr. Daniel Riordan, on September 29, 1964, complaining of his inability to work because of pain in his arm. In a report submitted December 4, 1964, Dr. Riordan stated:
“OPINION: I am unable to account for the patient’s continued pain in the forearm. I believe the limitation of extension of the elbow and the limitation of supination is probably due to the immobilization which he had following the fracture and later following the operative procedure.
“I can see no evidence of any vascular insufficiency on this arm or any nerve lesion in this arm to account for his pain.
“It is my usual practice, however, to remove the metalic agents in the forearm since we find that there is a great deal of motion over the plate and screws and this usually causes irritation of the muscles and tendons in the involved area of the fracture. I have occasionally seen tenosynovitis from the metal used in the fixation and in most cases, almost without exception, I plan to remove the plate and screws on patients that I have personally treated. It may be that some of the patient’s pain is from a tenosynovitis, but since this is in the proximal third of the forearm, it is covered by some muscle bellies and the clinical diagnosis of this cannot be made because of the cover of the plate and screws. My only advice would be that the plate and screws be removed since the fracture is now well healed and this would be at least a possible chance of getting rid of the pain which the patient complains of. I can find no other cause for the continued pain and would have no other recommendations to make.”
Another orthopedist, Dr. James Gilly, examined the plaintiff on September 8, 1964. His physical findings show a loss of 40 degrees of extension in the left elbow, normal pronation, but supination of twenty degrees less than normal. Some restriction of motion in the fingers was also indicated. Dr. Gilly stated in his report that the plaintiff had sustained approximately thirty per cent permanent disability of the left arm, with a possibility of reduction to twenty per cent with the passage of time. The doctor explained, however, that a severe language barrier prevented an accurate diagnosis, since the plaintiff spoke only broken English and was unable to give the physician an intelligible history of his accident and subsequent treatment. Consequently, Dr. Gilly prefaced his opinion on disability with a. desire for a complete history and information so that a more accurate evaluation-could be made.
During the time that the plaintiff was-admittedly totally disabled, the defendant insurer paid workmen’s compensation benefits at the rate of $22.75 a week for approximately 88 weeks, as well as medical expenses-in the amount of $2,129.36. Payments were discontinued on June 21, 1965, and on July 16, 1965, this suit was filed, in which-plaintiff sought a judgment of total permanent disability and a judgment for penalties and attorney’s fees for the defendant’s arbitrary discontinuance of compensation benefits. Plaintiff requested trial by preference and the case was assigned for trial on September 21, 1965. An additional date for trial was requested by plaintiff’s counsel in case the trial by preference was not held on the September date. Trial was fixed on the regular docket on March 9, 1966. The trial by preference did not occur due to a misunderstanding between the parties, and the court ordered that the- *591 case be tried on the date set in the regular ■docket order on March 9, 1966.
In anticipation of the trial, the discovery-deposition of Dr. James Gilly was taken and he was questioned extensively on his prior report by counsel for both parties. When questioned about the extent of the plaintiff’s disability and whether he could return to his former job without undue discomfort, Dr. Gilly testified:
“BY MR. MOUTON:
Q Did this man complain of pain, Doctor?
A Yes. He had a complaint of pain in the shoulder and in the forearm.
Q Can pain be a disabling factor?
A It can be, yes.
Q Do you have any reason to doubt this man’s complaints of pain as being legitimate?
A Not when he exceeded the range of movement that he can perform.
Q So as I would understand then your statement that he can return to work, it’s dependent upon whether or not he experiences pain when he works ?
A As I said, he will have pain in the position of forcing the hand into a full palm up situation or in trying to grip with the index, the great or the ring fingers, •of objects less than a half inch. Either one of those two factors will produce pain.
•Q If I told you that this man among other things listed by Mr. Leonard performed duties involving the handling of heavy parts and assembling pieces of machinery, in fact, parts so heavy as to require lifts, do you think he could perform that work?
A I don’t think the weight involved would be a question. It would be a question of forcing beyond the range that he •can perform comfortably. For instance, if á man is lifting two hundred pounds, but he lifts with his palms facing away from the body, it would be all right to lift two hundred pounds, assuming for the sake of argument that he could lift that. If he attempted to left it with the palms facing toward him, he would have trouble.
* * * * * *
Q And in the report rendered, dated September 11, 1964, you did not state, did you. Doctor, that that man could perform his normal and usual occupation?
A What I stated was that due to my difficulties with the language barrier, I could only give an approximate evaluation. Those were my precise words.
Q But you did not state in that report that he could do that work and, in fact, you admitted that your evaluation was somewhat less than desired because of the language barrier and the poor memory of the patient?
A That’s correct.
Q So that this evaluation is even less than an educated guess, wouldn’t you say ?
A Not as far as the definite limitations I put on him. Now, the indefinite or hypothetical limitations would be less than an educated guess.
:|í s}s ‡ ‡ s{i
Q In reference to Mr. Mouton’s question as to whether or not you stated in the report that the man could return to work, you did state in the report however, that this man had a thirty per cent permanent disability of the left upper extremity and you did not indicate any permanent disability of anything else; is that correct?
A That’s correct.
Q And it was merely related to that upper extremity?
A That’s correct.
*592 Q And additionally you also indicated that that would lessen with time; is that correct ?
A That’s correct. I had expected him to gain more movement in his elbow with the passage of time.
Q There was nothing in the report to indicate that the man could not return to work; is that correct?
A No. Actually, for the record, I really wanted to get — I got the hospital records, but I never could get the attending physician’s records and that’s what I really needed.”
With the approach of the alternate trial date, March 9, it was apparent that the case would again he continued and the counsel for plaintiff and defendant entered into a stipulation of the facts in order that the case might be submitted to the judge for decision. In that stipulation counsel specified that the discovery deposition of Dr. Gilly was to he introduced and filed in evidence. The duties of the plaintiff as an employee were stipulated thus:
“Mr. Hoffpauir was employed primarily as a • steam cleaner and would steam clean equipment by the use of a hose out of which steam was directed to the various parts of equipment he was cleaning. The equipment was delivered to the steam cleaning rack by the mechanics and picked up by the'mechanics.
“In connection with the putting together of implements mentioned by Mr. Hoff-pauir in his deposition on the pages specified above, Mr. Hoffpauir’s duties were also to put together the parts and the bulk of the nuts handled in doing this were of a large size, but occasionally there were smaller nuts, but the smallest one handled would be a half-inch. After he put these implements together, a mechanic would be assigned to check over the equipment before it was delivered to a customer or sold to a customer.
“Mr. Hoffpauir’s duties also included the lifting of objects. When the objects were quite heavy, he would use a chain-lifting device, but if the objects had to he shifted to get them in place for use of the chain-lifting device, other employees would aid him in shifting and lifting this equipment for this purpose. When the objects were light enough to be handled by one individual, he would lift them himself.”
The numerous doctors’ reports mentioned above were offered into evidence by the plaintiff, to which offering the defendant objected on the grounds that the reports were hearsay and not admissible. The defendant, in turn, offered the undated memorandum of Dr. Webre, to which the plaintiff objected on the grounds that immediately upon receipt of a copy of the report the plaintiff disputed the contents thereof by letter directed to the defendant’s counsel.
The basis on which the plaintiff offers medical reports of the four doctors and on which he objects to the introduction of the undated memorandum is LSA-R.S. 23:1122, which provides:
“The employer shall cause the examination provided for in the preceding section to be made immediately after knowledge or notice of the accident, and to serve a copy of the report of such examination made by the employer’s physician upon the employee within six days after the examination. If the examination is not made and the report is not furnished by the employer within that time, the employee shall furnish a report of the examination made by his own physician to the employer, for which the employee shall be entitled to receive from the employer the sum of one dollar. Upon the receipt by either party of such a report from the other party, the party receiving it, if he disputes the report or any statement therein, shall notify the other of that fact within six days, otherwise the report shall be prima facie evi *593 dence of the facts therein stated in subsequent proceedings under this Chapter.”
The judge of the district court, relying on the deposition of Dr. Gilly and the reports of the other physicians, found that the plaintiff was not entitled to total and permanent disability, but by virtue of the restricted motion of the plaintiff’s left arm, was entitled to an award based on a thirty per cent disability of that member. Accordingly, under the specific disability provisions of LSA-R.S. 23:1221, the judge awarded the plaintiff $10.00 per week for a period of 200 weeks ($2,000.00), subject, however, to a credit of $2,002.00 previously paid by the insurer. Anderson v. Continental Can Company, 141 So.2d 48 (La.App. 2d Cir.1962); LSA-R.S. 23:1223; see also Henry v. Ware Cotton Batting Plant, etc., 117 So.2d 270 (La.App.Orl.1960); Hall v. Pipeline Service Corp., 223 La. 821, 98 So.2d 202 (1957). Plaintiff has appealed from this adverse judgment and asks this court to reverse the finding of the trial judge and grant an award for total and permanent disability under the provisions of the Louisiana Workmen’s Compensation Law. In addition, the plaintiff asks that we award penalties -and attorney’s fees for the arbitrary discontinuance by the defendant or workmen’s compensation benefits.
The principal issue for our determination is whether at the time compensation benefits were discontinued by the insurer, the plaintiff was totally and permanently disabled under the provisions of the workmen’s compensation act as interpreted by the jurisprudence of this state.
In performing this delicate determination, the only source of information on which we may rely is a record made up of a discovery deposition of one orthopedic - surgeon and numerous medical reports of four doctors, the valuable portions of .which are in all probability inadmissible.[1]
Thus, the only testimony in the record which both parties concede is properly before the court is the deposition of Dr. Gilly, which was taken not for purpose of trial but merely as a discovery device. As the above quoted portions of this deposition show, Dr. Gilly was extremely handicapped in his evaluation of the total disability of his patient, the plaintiff. The poor memory of the plaintiff, coupled with Dr. Gilly’s lack of information as to his past medical history, rendered his evaluation of the plaintiff’s total disability, by his own words, “less than an educated guess.”
For this court to render a finding so determinative of the plaintiff’s rights and welfare and based upon no more evidence than is contained in the present record would be, in our view, most unwise. Accordingly, under the provisions of Louisiana Code of Civil Procedure Article 2164, we' invoke the well recognized principle that when, in workmen’s compensation cases, the lack of or conflict between medical evidence prevents a proper determination of the extent of the employee’s disability, the court in its discretion- will remand the case to permit the introduction of clarifying evidence which may permit the injured workman to prove disability. Robinson v. Fidelity & Cas. Co. of N. Y., 181 So.2d 318 (La.App. 3d Cir.1965); Jackson v. Kramer, 124 So.2d 338 (La.App. 4th Cir.1960); McKinney v. Avondale Marine Ways, 107 So.2d 835 (La.App.Orl.1959); Burk v. Security Ins. Co. of New Haven, 248 La. 177, 177 So.2d 278 (1965); Wade v. Calcasieu Paper Co., Inc., 229 La. 702, 86 So.2d 540 (1956). In this case we are of the opinion that the *594 interests of justice will best be served by remanding under the above rule so that either party may present evidence óf the extent of the disability suffered by the plaintiff herein.
For the foregoing reasons the judgment of the district court is reversed and the case remanded to the lower court for further proceedings not inconsistent with the views expressed herein. The costs of this appeal are to be borne equally by plaintiff and defendant, all other costs to await final outcome.
Reversed and remanded.
HOOD, J., dissents, being of the opinion that the judgment appealed from is correct.

. R..S. 23:1122 provides that: “* » * otherwise the report shall be prima facie evidence of the facts therein stated, in subsequent proceedings under this Chapter.” Since the facts of the accident and the subsequent treatment thereof are matters not in serious contest, the only valuable portions of the reports are the disability opinions of the respective doctors. These opinions are not facts therein stated within the intendment of the statute and are therefore hearsay evidence -as no opportunity of cross examination on the opinions of those medical experts is afforded the opposing party.