224 So.2d 470 (1969)
George L. DOSS
v.
AMERICAN VENTURES, INC., and Travelers Insurance Company.
No. 3299.
Court of Appeal of Louisiana, Fourth Circuit.
March 3, 1969.
On Rehearing June 2, 1969.
Rehearing Denied July 7, 1969.
*471 Sessions, Fishman, Rosenson, Snellings & Boisfontaine, Robert E. Winn, New Orleans, for plaintiff-appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Ignatz G. Kiefer, New Orleans, for defendants-appellants.
Before REDMANN, BARNETTE and GARDINER, JJ.
GARDINER, Judge.
Plaintiff, George L. Doss, alleging that he was employed by an independent contractor-painter who was hired by defendant, American Ventures, Inc., to paint a commercial building owned by the corporation, instituted this suit against the defendant corporation and its compensation insurer to recover maximum benefits and statutory penalties and attorney's fees under the Louisiana Compensation Act. From the judgment in plaintiff's favor for total and permanent disability, defendants have appealed. Plaintiff answered the appeal praying that the judgment be amended so as to award penalties and attorney's fees.
On November 17, 1965, while plaintiff was in the discharge of his duties as a painter, the scaffold upon which he was standing collapsed and he fell sustaining serious injuries to his foot and ankle. As a result of the injuries plaintiff asserts that he is permanently and totally disabled.
It is conceded that plaintiff's injury occurred while he was working as a painter in the course of his employment with the contractor on a building owned by defendant corporation; that offices, shops and stores in the building were leased by defendant corporation and it collected rents from its tenants under leases executed by it. The building was damaged in Hurricane Betsy of 1965, and had to be repaired and both the interior and exterior painted.
Defendants maintain that the trial judge erred in finding that (1) plaintiff was injured while working in the regular trade, business and occupation of defendant American Ventures, Inc., (2) certain written *472 medical reports objected to as hearsay evidence were admissible, and (3) plaintiff had proven his total and permanent disability as a result of the accident.
Under its charter, the defendant corporation is engaged in the business of buying and selling real estate, and from the evidence in the record, it owns and manages this one piece of real estate, located on Green Acres Road in the Parish of Jefferson. The building contains offices for doctors and dentists, a beauty parlor, a barber shop and a coin operated laundry. As we have stated, after Hurricane Betsy damaged the building the defendant corporation contracted with a Mr. Gould to paint it. Plaintiff was the exclusive employee of the contractor and his work was not supervised by the defendant corporation's officers.
Defendants' argument under its first contention is that the corporation is not engaged in construction, masonry or painting work, its regular business, trade or occupation being merely the collecting of the rents owed by its tenants who occupied its building. Therefore, they insist that under the provisions of LSA-R.S. 23:1035 plaintiff's injury did not occur within the scope of defendant corporation's regular business, trade or occupation and hence defendants are not liable to plaintiff.
The defendant corporation is composed of four brothers, one of whom, as its secretary-treasurer, testified as to its business, trade or occupation. While he insisted that this was "strictly collecting rents" from its tenants, at the time of plaintiff's injury "repair work was being done as a result of the hurricane"; otherwise "the tenants take care of their own problems, unless it's something major, of course."
From the foregoing, we think there can be no doubt that the owner and lessor corporation which manages a commercial building in order to lease or rent it as offices, stores and shops, as a necessary incident to rental, must also repair, maintain and paint the property. It is engaged, therefore, in the construction, repair, and painting of the building incidental to its business, trade or occupation, and that feature of its business being hazardous, the plaintiff, having been injured while performing services incident thereto for the contractor of defendant corporation is entitled to recover workmen's compensation.
A strikingly similar factual situation was presented to us in the recent consolidated cases of Stephney v. Robertson and Werner, and Stephney v. W. R. C. Construction Company, Inc., 219 So.2d 9. The opinion of this court was handed down on February 3, 1969. Stephney was employed as a painter and carpenter and in the course of his employment fell from a ladder and sustained injuries. The defendants, Robertson and Werner, owned rental properties which they personally managed and maintained. They were also licensed real estate brokers and managed rental property for the account of other owners. The defendant corporation was organized by them and its purpose was to deal in, lease, rent and manage real estate for its own account and as agent or broker. It could also remodel, repair and maintain property. As in the present suit, repairs in that case were made necessary by Hurricane Betsy in 1965, and plaintiff was employed in making such repairs. We held in the Stephney case that "the rental and maintenance of a substantial number of rental houses was a major part of the regular business of defendants Robertson and Werner." This court discussed and referred to the case of Richard v. United States Fidelity & Guaranty Co., 247 La. 943, 175 So.2d 277, in which the Supreme Court reversed the judgment of the appellate court, and held that at the time of the accident the plaintiff's employer, Landreneau Enterprises, was not carrying on a separate rental business and whatever rental business existed was a part of the total Landreneau Enterprises. The Supreme Court concluded that if the rental of houses was only one of the many endeavors of that company, then they were in the business of repairing houses and that *473 plaintiff was entitled to workmen's compensation benefits irrespective of the nonhazardous nature of the rental business, and said:
"Our jurisprudence has held that the rental of houses may not of itself be a hazardous business, but if the employer's business has hazardous features, the nonhazardous phase does not preclude amenability to the provisions of the Workmen's Compensation Law. * * *"
This court held in Stephney v. Robertson and Werner, supra, that plaintiff's climbing upon roofs and ladders in the performance of duties essential to his job as repairman was a hazardous feature of defendants' real estate business and that they were engaged in a hazardous business so as to allow recovery under the Workmen's Compensation Act, notwithstanding the nonhazardous features of their real estate and rental business. We are of the opinion that the conclusion reached by us in that case is applicable here.
We have read the cases cited by counsel for defendants to support their position, and find that those decisions were rendered prior to Richard v. United States Fidelity & Guaranty Co., supra, and Stephney v. Robertson and Werner, supra.
While the facts are undisputed that plaintiff was hired by an independent painting contractor to paint the building owned by the defendant corporation and his work was not supervised by it, it is nevertheless liable for workmen's compensation benefits to the contractor's employee if the employee is injured in the performance of such work. LSA-R.S. 23:1061; Meche v. Farmers Drier & Storage Company, La.App., 193 So.2d 807; Wynn v. Fidelity & Casualty Company of New York, La.App., 85 So.2d 315.
Plaintiff testified that after the accident he was admitted to Touro Infirmary by Dr. James T. Williams, then a member of a New Orleans group of orthopedic surgeons. X-rays were made of plaintiff's ankle. The verified hospital reports are in the record and show that plaintiff sustained a "markedly comminuted fracture of the distal tibia with involvement of the distal articular end of the tibia, with marked impaction." Dr. Williams applied a long leg cast and plaintiff remained in Touro Infirmary for eight days. He was seen on two subsequent occasions by Dr. Williams, the last visit being on December 6, 1965, when the cast was changed for another of the same type. Plaintiff returned to his home in Marshall, Texas. He could not get orthopedic treatment at the Veterans Hospital in Shreveport and was sent to Houston, Texas. At the hospital there an X-ray was taken of the ankle and a new cast applied after which he received outpatient care for six weeks when a shorter cast was placed on his leg. Next plaintiff journeyed to Dallas to the Veterans Hospital in which hospital the cast was removed and another applied. The cast was finally removed in June, 1966. Plaintiff continued to use crutches and later a walking stick and he testified that he experienced soreness and swelling in the ankle and for a considerable period of time walked with a limp. He was examined on November 15, 1966, by Dr. G. M. Hilliard, who was defendant insurer's doctor, at his orthopedic clinic in Longview, Texas. Dr. Hilliard X-rayed his ankle and made his report to the insurer on November 22, 1966. Dr. Williams made his report on November 14, 1966, addressed to plaintiff's former attorney. The reports of these two doctors were "interchanged" by counsel either before or at the trial. Dr. Williams did not testify and while counsel for plaintiff has not explained his absence at the trial, in oral argument the court was advised that Dr. Williams was serving in the United States Army. No explanation was given by counsel for defendants as to the reason why no depositions of Dr. Hilliard were taken on defendant's behalf since he did not testify. Both reports of the two doctors were offered in evidence by plaintiff.
When plaintiff offered the reports defendants objected to their admission as *474 hearsay. We think the trial judge correctly admitted the reports only as prima facie evidence of their contents under LSA-R.S. 23:1122. Under LSA-R.S. 23:1122, if there is any dispute as to the condition of the employee after the employer has had him examined, and the court appoints a specialist to examine the injured employee, he "shall report his conclusions from the examination to the Court, and such report shall be prima facie evidence of the facts therein stated." Dees v. Louisiana Oil Refining Corporation, La.App., 162 So. 597; Stroud v. Hartford Accident & Indemnity Co., La.App., 33 So.2d 772.
In Cade v. Tafaro, La.App., 34 So.2d 72, we held that the trial court properly admitted the report of plaintiff's physician over the same objection as that made here. In that case, which was a tort action, there had been an agreement that the parties would furnish the other with a copy of its physician's report and copies were interchanged as agreed.
Moreover, the court shall not be bound by technical rules of evidence in a workmen's compensation suit. The jurisprudence of this state in such cases is to the effect that hearsay evidence, within discretionary limits, is admissible. LSA-R.S. 23:1317. Manues v. Ships & Power, D.C., 180 F.Supp. 850; Clifton v. Arnold, La.App., 87 So.2d 386; Kilman v. Smith, La.App., 28 So.2d 499; Arrington v. Singer Sewing Mach. Co., La.App., 16 So. 2d 145.
Defendants rely upon the case of Hoffpauir v. Hardware Mutual Casualty Company, La.App., 192 So.2d 588, in support of their contention that the doctor's reports in this case were hearsay. It is true that the court states that the "valuable portions" of doctors' reports, that is, their opinions as to disability are "in all probability inadmissible" under LSA-R.S. 23:1122. To the extent that the Hoffpauir case questions the admissibility of disability opinion reports under section 1122 as constituting proof of the disability, we agree that this is not the intent of the statute. However, we believe such statements of opinion are admissible to prove prima facie the fact that the doctor is of such opinion. This is similar to the usual stipulation of counsel for admission of a doctor's report which is not that the doctor's findings and opinions are correct, but merely that the doctor would testify that these are his findings and opinions.
The disputed portion of the report of defendants' doctor after his examination of plaintiff is as follows:
"This man's ankle symptoms are the result of post traumatic arthritis. I doubt that there will be much in the way of spontaneous improvement from now on. In fact, he may experience gradual increase in his symptoms of left ankle pain and stiffness as time goes on. At the present time his symptoms are such that no further definitive treatment seems indicated. In the future, however, if he should experience a gradual increase in the severity of his ankle symptoms to the point where they are intolerable an arthrodesis (fusion) of the ankle joint will be indicated. For the present time, he should avoid work which involves prolonged standing, walking, stooping, squatting, etc., to the foot."
Dr. Williams, plaintiff's doctor, in his report giving his history, physical and X-ray examination and treatment, concluded as follows:
"It was my opinion that the patient had sustained a very severely comminuted fracture of the left distal tibia which extended into the distal articular surface of the tibia. Although it was possible to realign the multiple fracture fragment into a satisfactory position and alignment, the prognosis was guarded. Fractures which extend into an articular surface not uncommonly result in post-traumatic arthritis of the involved joint. This possibility could not be ruled out in this case."
*475 Plaintiff testified that his left ankle "gets stiff, and it's stiff to a certain degree now. I can't move it but just a little. * * * I can't get around as good as I used to." He also testified that he did not work until the fall of 1966 and then drove a truck and was a dog catcher for short periods of time, but he could only do some painting from a stepladder. He says that he cannot climb up and down on extension ladders or do any "high work" and that, as a consequence thereof, his ability to perform his regular painting work has been substantially reduced. When asked on cross-examination if any doctor ever told him that he could not do high painting work, he answered:
"Well, Dr. Williams told me that I probably never would be able to do any climbing no more; but every orthopedic I went to at the V.A. and also the insurance [company's doctor] told me that leg would always bother me and would be stiff, and said eventually I'd have to have that ankle fused and make it stiff."
As there is no contradictory evidence, plaintiff's statement must be accepted as the truth. Barbara v. Lumbermen's Mutual Casualty Company, La.App., 137 So.2d 466.
We are of the opinion that the evidence in this record is sufficient to sustain the finding of the trial judge that at the time of the trial plaintiff was totally and permanently disabled.
Plaintiff's claim for penalties and attorney's fees, which were rejected by the District Court, cannot be allowed. There is no evidence whatsoever in the record to show that the defendant insurer acted arbitrarily and capriciously.
For the above reasons, the judgment appealed from is affirmed.
Affirmed.

ON REHEARING
PER CURIAM.
This is a suit under LSA-R.S. 23:1061 seeking workmen's compensation from the owner and the insurer of a building, which the owner had contracted with plaintiff's employer to repaint after hurricane damage.
One of the material elements of a claimant's cause of action under § 1061 is that the work done by the contractor be work for the principal "which is part of his [the principal's] trade, business, or occupation or which he [the principal] had contracted to perform" (bracketed words supplied). The key question as to liability in this case is whether plaintiff's employer's work was part of the business of the building owner.
The trial court had found liability. Our original opinion expressed the view that, since the business of the owner was renting offices and shops in the building, and in order to rent the owner must also maintain, repair and paint the property, such activity was incident to and part of the owner's business within the meaning of § 1061.
Defendants argue our conclusion of liability is in conflict with Richard v. United States Fidelity & Guaranty Co., 247 La. 943, 175 So.2d 277, 286, and Speed v. Page, 222 La. 529, 62 So.2d 824, 828, insofar as those cases indicate non-liability where repairs are done by contract in the following language:
"* * * [If] the operator of an admittedly hazardous business, in the conduct of that business undertakes repair, whether it be of the building housing the same or the equipment therein, rather than have it done under contract, his employees come under the protection of the employers' liability laws of this State." (Emphasis by defendants.)
However, we believe the emphasized language must be understood in the context of the two cases, in each of which demolition and reconstruction of buildings were the work undertaken by hazardous business operators whose business did not ordinarily include such work. The language implies to us only that reconstruction of business buildings may be undertaken by an owner *476 through a contractor without compensation liability to the contractor's employees. The language does not, and could not because of LSA-R.S. 23:1061, mean that one could avoid liability by employing a contractor to do work which is "part of his (the principal's) trade, business, or occupation."
We adhere to the view that ordinary maintenance, repair and painting (including repair of ordinary storm damages of a minor nature) is normally a part of the business of renting one's building. The business of the usual lessor is to provide suitable accommodations for his tenants, in return for which he receives the business' income, the rent. Ordinary maintenance, repair and painting of the accommodations is a part of the providing of such accommodations; is a part of the "stock in trade" the tenants pay for; and is thus an integral element of the business operation. (Of course a lessor might, especially in a long-term lease, require the lessee to attend to all maintenance and repair, etc., and thus limit his "business" to providing building space only. Then the lessor might have no occasion to "undertake to execute any work" within the meaning of LSA-R.S. 23:1061, and thus might not be liable to his lessee's contractor's employees.)
We believe the conclusion that the lessor is liable in compensation to construction tradesmen employed directly or through a contractor for ordinary maintenance, etc., is required by the wording of the statute, and is not inconsistent with the Supreme Court expressions in Speed and Richard. The statutory wording is "employment in the course of his employer's * * * business," LSA-R.S. 23:1035, and "part of his * * * business," § 1061. These words do not say the employer must be "in the business" of, e. g., painting, in the sense that he must offer painting services to the public as a separate enterprise or undertaking. Where one is "in the business" in this sense, § 1061's alternative words, "or which he had contracted to perform," would apply. The earlier words "part of his * * * business" would be superfluous and misleading.
We distinguish Caldwell v. George Sproull Co., Inc., 184 La. 951, 168 So. 112, where the defendant used its building in the business of wholesale and retail sale of paints and wallpaper, and the plaintiff paper hanger, injured while papering the walls, was held not to have been employed in the course of the employer's business. There the business was selling paint and paper; the paint and paper sold were just as good and just as saleable whether or not the interior of the store was freshly decorated. The decoration of the building was not a fundamental part of the operation of selling paint and paper.[1] In the case of a lessor, as we have noted, the painting, etc., is part of what the lessor delivers to his clients, is part of the operation of providing suitable rental accommodations.
Whether contracted work is part of the "operation" of the business (as opposed, e. g., to original construction or reconstruction of one of its facilities) has been utilized as a factor in determining whether the work is a part of the business within the meaning of § 1061 in Horrell v. Gulf & Valley Cotton Oil Co., 15 La.App. 603, 131 So. 709, and was emphasized as a determining factor in Finn v. Employers' Liability Insurance Corporation, La.App., 141 So.2d 852, 869. We repeat our view that ordinary maintenance and repair of leased premises is a part of the operation of the usual lessor's business.
In Jarrell v. Ewing, 7 La.App. 502, cited by appellants, the defendant's principal purpose in purchasing and restoring a *477 house near his home was to rid the neighborhood of an eyesore, and it might be said this was not at all a business purpose, in spite of his decision to rent the house.
In Brown v. Hartford Accident & Indemnity Company, La.App., 109 So.2d 811, plaintiff was injured while working on the exterior of defendant's insured's home, "which also contained a unit renting for $25 per month." The maintenance of one's home is not a business activity at all, and plaintiff's work in Brown does not appear to have been on that portion of the dwelling which was rented.
But we return to the point that in our view the Supreme Court has indicated in Speed v. Page and Richard v. United States Fidelity & Guaranty Co., that reconstruction work, like original construction, is not part of the owner's business and thus may be contracted for without compensation liability to the contractor's employees. However, in both Speed and Richard the court granted recovery to the injured workman on a finding of fact that he was not an employee of a contractor, but of the owner.
In the record before us, the testimony of one officer of the owner corporation is that "substantial work and construction" was necessary because of the damage done by Hurricane Betsy. The painting involved both interior and exterior of the building. Although four photographs of the damaged building were taken by defendants and introduced into evidence by plaintiff, they are not in the record, the trial court does not have them, and neither counsel could produce them. We are unable to decide from the record whether the work undertaken by the owner through contractors was of the character of ordinary maintenance and repair (including ordinary storm damage), or whether it was reconstruction. In fairness to all parties, we have determined to remand the case to the district court for resolution of this issue alone. If plaintiff can establish that the damage was within the category of minor storm damage necessitating maintenance repairs as distinguished from reconstruction he should recover.
Defendants also complain of our conclusion that LSA-R.S. 23:1122 authorizes, when its terms are met as in this case, the acceptance of a medical report as prima facie evidence of the fact that the reporting physician is of the opinion therein expressed. The pertinent part of the statute reads:
"* * * Upon the receipt by either party of such a report from the other party, the party receiving it, if he disputes the report or any statement therein shall notify the other of that fact within six days, otherwise the report shall be prima facie evidence of the facts therein stated in subsequent proceedings under this Chapter." (Emphasis supplied.)
The wording, "report shall be prima facie evidence of the facts therein stated," is used verbatim in the immediately following section of the workmen's compensation law, LSA-R.S. 23:1123, dealing with reports of court-appointed physicians. Because § 1123 says the court appointee "shall report his conclusions," we believe the intent of the language in § 1123 is that the court should receive the report as prima facie evidence that the physician is of the opinions contained in the report. We suggest that the intent of the wording, used so closely together in one statute, is the same in § 1122.
Next, from the language of § 1122 we emphasized above, it is incumbent on a party disputing any statement therein to notify the other within six days. The statute does not refer at that point to "facts," and we cannot substitute for its language the view that only where "facts" are disputed is notification necessary. Dispute as to opinion or conclusion must also be notified. Failure to notify deprives one of no substantive right, not even the right to call the reporting doctor as a witness for *478 cross-examination. It merely authorizes receipt into evidence of the report, thus eliminating the obligation to produce the reporting physician in person as a witness and to tender him for cross-examination. The report is then "prima facie evidence of the facts therein stated." To make meaningful the requirement of notice "if he disputes * * * any statement therein," and the "otherwise" result, we believe we must include, in the "facts" then prima facie evidenced, the fact that the reporting physician is of the opinions expressed in the report. The report is evidence, not that the opinion is correct, but that it is the doctor's opinion.
And finally, on the interpretation of "facts therein stated," we submit that § 1122 (and § 1123) would become almost completely devoid of purpose unless interpreted as above. Our brothers of the Third Circuit have said that the doctors' opinions in such reports are not admissible under § 1122, in Hoffpauir v. Hardware Mutual Casualty Company, La.App., 192 So.2d 588, 593. Yet their opinion notes the doctors' opinions are "the only valuable portions of the reports." We believe § 1122 intends to place something of value before the court, and makes the reports prima facie evidence of the fact that the reporting doctor is of the opinions reported.
Additionally plaintiff testified that, at the time of the trial, his ankle was stiff and he could move it only a little. He further said that he could not climb up and down on extension ladders or do any "high work," and consequently, he can only use a stepladder.
We reiterate what we said in our original opinion as follows: When asked on cross-examination if any doctor ever told him that he could not do high painting work, he answered:
"Well, Dr. Williams told me that I probably never would be able to do any climbing no more; but every orthopedic I went to at the V. A. and also the insurance [company's doctor] told me that leg would always bother me and would be stiff, and said eventually I'd have to have that ankle fused and make it stiff."
We are of the opinion that the evidence in this record is sufficient to sustain the finding of the trial judge that at the time of the trial plaintiff was totally and permanently disabled.
Plaintiff's claim for penalties and attorney's fees, which were rejected by the district court, cannot be allowed. There is no evidence whatsoever in the record to show that the defendant insurer acted arbitrarily and capriciously.
For the reasons assigned, our former decree is recalled and set aside, and the case is remanded to the district court for the limited purpose of determining whether the work undertaken by the owner of the building through its contractor is in the category of ordinary maintenance and repairs, or whether it was reconstruction, and for such judgment as is consistent with the views herein expressed.
Original decree recalled and set aside.
Remanded.

ON APPLICATION FOR REHEARING
PER CURIAM.
Plaintiff asks rehearing claiming our distinction between ordinary maintenance and reconstruction is not justified by the authorities cited. We remain of the opinion this distinction was required by those authorities, and we also cite Ponthieux v. Lindsay, La., decided June 27, 1969, as denying application of LSA-R.S. 23:1061 in demolition and reconstruction cases.
However, we were too restrictive in our language limiting plaintiff to recovery if he "can establish that the damage was within the category of minor storm damage necessitating maintenance *479 repairs as distinguished from reconstruction". We should have made recovery depend on the particular work plaintiff was doing, rather than on the extent a storm damaged the building, if he was doing ordinary maintenance painting he should recover under § 1061; if he was painting a reconstructed portion of the building as part of its reconstruction, § 1061 is not applicable because reconstruction is not part of defendant's trade, business or occupation.
The application for rehearing is denied.
Rehearing denied.
NOTES
[1] But see Mau v. Industrial Steel Products Company, Inc., La.App., 119 So.2d 654, cert. denied, where a painting contractor's employee was held governed by § 1061 and denied a tort action against the steel fabricator whose building and equipment he was painting, where such painting was ordinarily regularly done by direct employees of the fabricator.